**William A. AGORANOS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 25997.**

United States Court of Appeals
Fifth Circuit.

April 2, 1969.

Rehearing Denied April 30, 1969.

Eli H. Subin, of Roth, Segal & Levine, Orlando, Fla., for appellant.

Edward F. Boardman, U. S. Atty., Robert B. McGowan, Tampa, Fla., Allan P. Clark, Asst. U. S. Attys., Jacksonville, Fla., for appellee.

Before PHILLIPS,* BELL, and MORGAN, Circuit Judges.

BELL, Circuit Judge.

Appellant was convicted of filing false and fraudulent income tax returns in violation of § 7201 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7201. The income tax returns involved were for the years 1960, 1961, and 1962. His return reflected no taxable income for the year 1960 whereas the government claimed that he had taxable income of $13,295.60. Taxable income of $2,375.67 was reported for the year 1961 and the government claimed that the true taxable income was $10,732.45. For 1962, appellant reported $1,229.38 as taxable income and the government contended that his true taxable income was $11,773.95.

▪ Appellant's books and records were inadequate and the government established its case on the net worth approach.[1] The beginning point was net

---

* Of the Tenth Circuit, sitting by designation.

1. The court stated in Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150:

"In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an 'opening net worth' or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income. * * *" 348 U.S. at 125, 75 S.Ct. at 130.

worth as of December 31, 1959. The jury resolved the issues against appellant and this appeal followed. We affirm.

There are two assignments of error. One is the contention that appellant's Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel were violated by the failure of an internal revenue investigator to give him a *Miranda* type warning at the time of an interview. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R. 3d 974.

It appeared that the investigation of appellant had begun on April 30, 1963. Simultaneously the government was investigating the affairs of Thomas Butman to whom appellant had made a loan. On July 29, 1963, a special agent interviewed appellant regarding the repayment of the loan by Thomas Butman. No Miranda warning was given; in fact, the agent testified that he did not know at the time that appellant was being investigated. The Butman loan was included as a loan receivable in the beginning net worth statement and it is appellant's position that the entire new worth statement was rendered inadmissible by the failure to give the Miranda warning. Additionally, as we perceive it appellant claims that he was prejudiced by the disclosure that Butman was a Las Vegas gambler.

Assuming, *arguendo*, that the introduction of the Butman loan evidence prejudiced appellant, the short answer is that appellant was not in custody and the *Miranda* doctrine applies only to in-custody interrogation. Cf. Mathis v. United States, 1968, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381. Moreover, there was no objection to the implication that Butman was a gambler and the testimony did not rise to the level of plain error.

The other assignment of error is based on the contention that the government was in possession of leads as to sources of cash on hand which were not sufficiently investigated and thus the opening net worth used by the government was inaccurate and invalid within the teaching of Holland v. United States, supra, 348 U.S. 121, 135, 75 S.Ct. 127, 99 L.Ed. 150. These leads had to do with monthly income from the sale of a bar being received in 1959, the sum of $4,600 received on July 29, 1959 from a stockbroker, and the sum of $2,500 withdrawn from appellant's bank account on November 16, 1959. Another lead had to do with a loan to E. C. McGee in the amount of $1,000 which it is urged should have been included as a loan receivable in the opening net worth.

Accuracy in the opening net worth statement is important since the correctness of the end result depends on all assets being included at the outset. However, we are convinced from a careful consideration of the evidence that the government was not remiss in its handling of these leads. Considered in light of appellant's transactions during the year 1959 and in light of the opening net worth statement as of December 31, 1959, they were sufficiently accounted for within the teaching of *Holland*. There was no failure to negate reasonable explanations of appellant's net worth position which were inconsistent with guilt. The opening net worth statement included $2,000 cash on hand plus some $5,700 in banks. During 1959 appellant made a lump sum alimony settlement with his wife in the amount of $13,300 and he admitted that $5,800 of this sum was paid in cash or checks. During the same year he spent $2,800 in cash for a swimming pool and also made certain loans. We think that these expenditures tend to account for the sums in question. The evidence of a loan being outstanding on December 31, 1959 to McGee was inconclusive.

Affirmed.