UNITED STATES of America, Plaintiff-Appellee,

v.

Alan H. ROTHSTEIN, Defendant-Appellant.

No. 75–3559.

United States Court of Appeals, Fifth Circuit.

May 3, 1976.

Rehearing Denied May 26, 1976.

R. Harris Turner, Miami, Fla., David U. Tumin, Jacksonville, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Scott P. Crampton, Gilbert E. Andrews, William D. Hyatt, Robert E. Lindsay, Dept. of Justice, Tax Div., Washington, D. C., for plaintiff-appellee.

Before TUTTLE, THORNBERRY and TJOFLAT, Circuit Judges.

TUTTLE, Circuit Judge:

Alan H. Rothstein, a lawyer, and city attorney for the City of Miami during the tax years in question, here appeals his conviction on three counts of having subscribed, under the penalties of perjury, to individual income tax returns for the years 1970, 1971 and 1972 which he knew not to be true and correct, in violation of 26 U.S.C. § 7206(1).

The appellant does not challenge the sufficiency of the evidence to permit the case against him to go to the jury which, in effect, was that while the defendant was acting as city attorney he also maintained a private practice of law and both understated the receipts from his private law practice in two of the years in question and had substantially overstated the allowable deductions for his law practice in all three tax years.

The issues presented on appeal may be summarized as follows: (1) whether the trial court erred by declining to suppress evidence in the form of records of the taxpayer which were turned over to the Internal Revenue agent either because (a) the investigation was of a criminal nature and the taxpayer was thus entitled to *Miranda* warnings; or (b) because the Internal Revenue Service deceived the taxpayer into believing that the agent was engaged only in a regular audit, whereas he was, in fact, pursuing a criminal investigation from the outset.

(2) Whether reversible error was caused by the refusal of the trial court to grant a mistrial or cautionary instruction where some jurors apparently took with them during the trial certain summary illustrative charts prepared by an expert witness but not admitted into evidence.

(3) Whether reversible error occurred when the trial court permitted the Government to offer evidence tending to show illegal acts by the taxpayer, which the Government claimed were a part of the scheme and device by which the taxpayer either covered up income received or misstated deductions taken.

(4) Whether the district court erred in refusing to give an "informer" instruction to the jury with a special reference to the testimony of a witness who had been a former employee of the accused, but as to whom there was no evidence of his having been employed as a Government informer.

(5) Whether the cumulative sum of the alleged errors, even though found harmless individually, would require reversal.

## I. THE IRS INVESTIGATION.

At the defendant's request, the trial court held a suppression hearing prior to the trial to determine whether the revenue agent examining the defendant's returns had been acting as a special agent or at the direction of the Intelligence Division of the Internal Revenue Service, the defendant contending that in such event, he would have been entitled to *Miranda* warnings before he surrendered any of the records which he authorized his accountant to turn over to the agent. At the suppression hearing, Revenue Agent Schulman testified that the case was assigned to him "by my group supervisor. . . . It was given to me as an ordinary audit, just as every other audit was given to me." In response to the question: "All that you were told was that you were to go out and do a regular field audit?" he said: "A regular examination."

Appellant lays great emphasis on a statement in response to the following question: "You do not know if he was selected by computer or if specific intelligence information came in that caused you to go out?" the answer was: "I think this was selected by the Narcotics Traffickers Commission in Washington." Question: "And did they send you out with a special agent?" Answer: "No."

This is the only testimony in the record about the Narcotics Traffickers Commission. There was no other evidence to the effect that the Agent Schulman, was assigned to do anything more than a regular field audit except that some five months later he referred it to the Intelligence Division. Thereafter, he went with the special agent to the office of taxpayer's lawyer where according to Rothstein "the first time [I had] a specific memory of being read my rights was when I was subpoenaed to come down and . . . I had a reporter there and they read me from a card my rights although I was present at another meeting when there were some intelligence agents there, just sometime prior to that . . . but I don't recall whether they read me my rights at that time or not. . . ."

After hearing the evidence dealing with both the question as to Rothstein's being entitled to *Miranda* warnings and to the alleged deceitful conduct of the Internal Revenue Service, the trial court denied the motion to suppress with the following statement:

"Gentlemen, I am going to hold that this matter originated, from the evidence before the Court, as a civil audit examination; that Mr. Schulman was not directed by any person to conduct a criminal investigation; that he conducted entirely a civil investigation; that he made no misrepresentations to the taxpayer as to the nature of the investigation, nor was there any duty upon him at that point to advise the taxpayer of his Miranda rights, or anything else."

### (A) *The Miranda Warnings.*

This Court has repeatedly faced the question whether *Miranda* warnings are required when a taxpayer, even when under investigation by a special agent, thus carrying criminal overtones from the start, is entitled to have the benefit of *Miranda* warnings before he surrenders his tax records and books. In such cases, we have repeatedly held that unless the demand for access to the

books and records is made of an accused person who is in custody he is not entitled to be told of his rights and warned against self-incrimination. *United States v. Prudden,* 424 F.2d 1021 (5th Cir. 1970); *Marcus v. United States,* 422 F.2d 752 (5th Cir. 1970); *Agoranos v. United States,* 409 F.2d 833 (5th Cir. 1969). In *Prudden* we stated that in *Marcus, supra,* this Court had stated:

> "In a criminal tax fraud case, this Court has recently held that the Miranda doctrine applies only to in-custody interrogation. *Agoranos v. United States,* 409 F.2d 833 (5th Cir. 1969). Since [the taxpayer] was at no time in custody during the Internal Revenue Service investigation, the contention is without merit." 424 F.2d at 1031.

### (B) *Allegations of Fraud and Deceit.*

■ As pointed out above, the trial court expressly found that the United States had not misrepresented to the taxpayer the nature of the investigation. This was the entire basis of the allegation of fraudulent and deceitful conduct by the Government which the appellant contends under the principles announced ·elsewhere in *Prudden*[1] required the court to suppress the evidence received from the taxpayer and his accountant. In *Prudden* we stated:

> "We conclude that the mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the .investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery." 424 F.2d at 1033.

Thus, the finding of the trial court, clearly supported by the record, negates the appellant's contention.

### II. JURORS' POSSESSION OF SUMMARIES.

The second ground of appellant's appeal here is that the trial court erred in

not declaring a mistrial or quizzing the jury as the result of a mischance that may have occurred following the conclusion of the Government's case-in-chief. What happened is that the Government's expert witness, based upon the testimony and exhibits presented, expressed his opinion as to the correct manner in which items on appellant's tax returns should have been treated; charts summarizing this testimony were distributed to the jury but were not admitted in evidence; at the conclusion of that day's proceedings summary charts were not ·collected from the jury and after the close of the case, counsel for the defendant claimed that some of the members of the jury must have taken the charts home with them, or at least out of the courthouse. It was never actually established that any juror took such a summary home, except that when the clerk on the morning following their use sought to pick up the spares he was unable to find them all in the jury box.

Upon this state of facts defendant claimed that his interests were prejudiced because some of the jurors must have had a summary showing the Government's contentions with respect to the specific items at issue and that at the least the trial court should have examined the members of the jury to ascertain whether any of them had retained possession of the summaries and had considered them, contrary to the court's instruction that they should not give consideration to the case until all the evidence was in. The Government countered by pointing out that the summaries were testified to not only on the day on which they were used to illustrate the revenue agent's expert opinion but the same items were again presented to the jury the following day on a summary prepared for the defendant to show them in contrast to his contentions as to the proper disposition of the items referred to. They were also made use of by appellant's counsel during a cross-examination of the Government's expert.

---

1. "While we recognize that fraud, deceit or trickery in obtaining access to incriminating evidence can make an otherwise lawful search unreasonable, . . . [footnotes omitted.]" 424 F.2d at 1032.

██ Of course, no materials either introduced in evidence or excluded from evidence should be in the possession of members of the jury outside of the courtroom. Here, however, there was no misconduct charged to anybody. In fact, defense counsel (other than counsel on appeal) admitted during the hearing: "It is no one's fault." And further: "It is my fault for not seeing it and objecting." The court then said: "Well, it is basically the clerk's fault. The clerk should have collected them." In view of the fact that the summaries were used in court the day following the supposed mischance, and also in view of the absence of any proof that any juror actually had possession of any of the summaries, we are satisfied that such error as may have occurred would be harmless error beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See United States v. Burrell*, 505 F.2d 904, 909 (C.A.5, 1974).

## III. TESTIMONY OF OTHER ILLEGAL CONDUCT.

During the testimony of one Government witness, a lawyer named Coon, it had been made to appear that Mr. Coon had paid the taxpayer $2,500 of a $5,000 fee earned in a zoning matter which had been referred to him by the taxpayer. Then, in connection with questioning as to the settlement of a large claim on behalf of a client with the City of Miami, Government counsel inquired: "Did there ever come a time in the fall of 1970, Sir, when, in connection with the arranging for a $240,000 check due this company from the City of Miami, you delivered to Mr. Rothstein's office an envelope containing cash?" The witness answered: "No, Sir." Question: "In $100 bills?" Answer, "No, Sir."

Thereupon, counsel for the taxpayer objected and moved to strike the question stating: "I wish the jury be instructed regarding the question. The mere question is destructive." Thereupon, Government counsel said: "Your Honor, I think this matter will be followed up at a later date."

The court overruled the motion.

Subsequently, counsel made a motion for mistrial on the basis of the questioning of Mr. Coon regarding the envelope with money stating, however, "If and when there is other testimony regarding that matter, it may become material, but considering the question and answer, it is highly prejudicial and I request a mistrial."

The trial court denied the motion, but during the discussion the court stated: "If they can prove by other evidence . . . .," to which counsel stated: "If they can, we have no error."

It clearly appears that by subsequent proof testimony was given by another witness that Coon had, in fact, delivered an envelope with cash in it to him for the defendant.[2] This, of course, was evidence tending to prove that the witness, Coon, had, in fact given money to Mr. Rothstein and had fully justified the question asked him by the Government on direct.

██ From questions such as this, appellant complains that he was actually tried for other offenses such as giving bribes to other public officials or accepting bribes himself. We have carefully considered each of the challenged bits of evidence, and find that as to those which were objected to, they were nevertheless admissible either because they directly constituted the proof that the defendant had actually received income which did not appear on his tax returns or gave evidence of his knowledge that he was not handling certain deductions properly because they tended to show that he was using the funds for illegal purposes

---

2. This evidence is as follows:

"A. Well, I believe it was in the fall or early winter of 1971 that Mr. Coon came to our offices. Mr. Rothstein was busy. Mr. Coon came into my office, talked to Mr. Rothstein on the intercom and turned around and handed me an envelope, an open envelope and showed me that it contained money. I put it my jacket pocket. Mr. Coon left. About 10 minutes later Mr. Rothstein came out of his office and I handed him the envelope."

which he had claimed to have deducted for services or other business expenses. This is not a case in which the prosecution sought to introduce evidence of prior unconnected criminal conduct to show motive, intent or identity and thus the cases of *United States v. Goodwin*, 492 F.2d 1141 (5th Cir. 1974) and *United States v. Lawrence*, 480 F.2d 688 (5th Cir. 1973) are not applicable.

## IV. REQUEST FOR INFORMER INSTRUCTION TO THE JURY.

The trial court declined to give a requested "informer" instruction because the court did not determine that Wright, the defendant's former employee who had returned from Bolivia at the Government's expense to testify while under subpoena was an informer. This determination is clearly correct. There was no basis for submitting to the jury a question as to whether Wright was an informer within the context in which the instruction was requested. Moreover, appellant at the charge session with the trial court, agreed with the elimination of the word "informer" from the requested charge, leaving it simply a request that the jury be charged as to its approach to the testimony of a witness who might in some way be rewarded by the Government. We think this was adequately covered by the charge that was given in the following terms:

> "In weighing the testimony of each witness, the jury should consider his relationship to the Government, or the defendant; the witness' interest, if any, in the outcome of the case; or his or her manner of testifying; his or her candor, fairness and intelligence; and the extent to which he or she has been corroborated or contradicted, if at all, by other credible evidence."

## V. THE CUMULATIVE SUM OF THE ALLEGED ERRORS.

We have carefully reviewed the transcript of the trial and conclude that no reversible error occurred. Nor do we find that adding the several contentions of the appellant together can we believe that appellant was denied a fair trial. Such errors as may have occurred we find to be harmless beyond a reasonable doubt.

The judgment is AFFIRMED.