**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ramiro D. CARRILLO, and O. P. Carrillo, Defendants-Appellants.**

**No. 75–4380.**

United States Court of Appeals,
Fifth Circuit.

Oct. 31, 1977.

Rehearing Denied Nov. 30, 1977.

Arthur Mitchell, Austin, Tex., William D. Bonilla, Corpus Christi, Tex., Richard Haynes, Houston, Tex., Burrell Johnston, David Spencer, Austin, Tex., Raul Garcia, Corpus Christi, Tex., for defendants-appellants.

O. P. Carrillo, pro se.

Ramiro Carrillo, pro se.

George A. Kelt, Jr., Asst. U. S. Atty., James R. Gough, U. S. Atty., Houston, Tex., John P. Smith, Asst. U. S. Atty., Brownsville, Tex., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants Ramiro D. and O. P. Carrillo appeal from their conviction by a jury of conspiracy to make and subscribe false individual and partnership income tax returns and filing false tax returns in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7206(1). Appellants raise six issues on appeal. None of them merit reversal of their convictions. We affirm.

Appellants here, defendants below, owned and operated the Farm and Ranch Supply in Benavides, Texas. Because the defendants held various public offices,[1] they could not make direct sales to governmental entities through the Farm and Ranch Supply. Defendants allegedly created a second

---

1. Ramiro D. Carrillo was a Duval County Commissioner from February 1967 through 1970. He was also a city councilman for Benavides, Texas. O. P. Carrillo was Duval County attorney from 1967 to 1970. He was on the Benavides Independent School Board from 1963 through 1970. Later he was a state district judge.

business known as the Zertuche General Store for the purpose of making those sales. The government produced witnesses who testified that the Zertuche store was a sham, that it had no inventory of its own, and that it was in fact used by the Carrillos to launder money never claimed on their tax returns. Cleofas Gonzales, an employee of the defendants, testified that the Zertuche General Store was controlled by the Carrillos. Gonzales testified that the putative proprietor, Arturo Zertuche, was absent from the county most of the time that the store was in operation, that Zertuche had never given Gonzales orders or instructions concerning it, that the Zertuche store had no separate inventory from that of Farm and Ranch Supply, and that Arturo Zertuche's sole connection with the store was his signature on blank checks submitted to him.[2] Rodolfo M. Couling, another employee, testified that the defendants had given him blank invoices of the Zertuche General Store and had instructed him to complete falsely numerous invoices allegedly representing purchases from the Zertuche General Store. Additional testimony revealed that many checks were cashed bearing the endorsements of O. P. Carrillo or close friends and associates. Couling testified that in numerous instances those checks were cashed by others, but the proceeds were returned to the Carrillos. This scheme had the additional result that income received in the name of the Zertuche General Store was never deposited into business bank accounts which served as the source of the gross receipts figures on both the Carrillo and Zertuche returns. As a consequence neither the partnership returns of the Farm and Ranch Supply nor the Schedule C individual return of Arturo Zertuche reflected the amount of money that had passed through the combined operations.

## I.

The defendants assert that the district court erred in admitting the testimony of Cleofas Gonzales and Rodolfo M. Couling tending to show that money from sales to local government bodies by the Zertuche General Store was obtained by the defendants in violation of state law. Defendants contend that this violates Federal Rule of Evidence 403 and 404(b).[3] The district court found that the defendants' conduct was so intertwined with their other acts, which seemed to violate various state laws, that the government could not have presented its case in any intelligible manner without exposing the possible state law violations. We note that the government charged the defendants with filing a false return by failing to show income received. In order to demonstrate the receipt of the income, the government necessarily had to show the income's source. *United States v. Diez*, 515 F.2d 892, 904, n.17 (5 Cir. 1975). The evidence of unsavory business dealings might have been the basis for a state court prosecution. It was, nevertheless, inextricably tied to the basic elements of proof of filing false tax returns. *United States v. Hoffman*, 415 F.2d 14, 18 (7 Cir. 1969). Moreover the district court gave an instruction that clearly stated that the defendants were not charged with prior crimes, thus limiting the possible impact of any allusion to a state law violation.

2. Arturo Zertuche's association with the Zertuche General Store followed that of his brother Hector. Both were nephews of the Carrillos. Other disputed testimony revealed that Arturo Zertuche was attending college out of the county or was absent in the military for most of his association with the store.

3. Rule 403 provides that:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 404(b) states that:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge identity or absence of mistake or accident.

## II.

■ The defendants' second claim is that the district court erred in the admission of a plea bargaining statement made by Arturo Zertuche and that this error violated their Sixth Amendment confrontation rights.[4] Zertuche, indicted for conspiracy to file false returns and for the substantive offense of filing a false return, was originally a codefendant with the Carrillos. In a plea bargaining session between government officials and Zertuche's then-attorney Nago Alaniz, Zertuche made the complained-of statement. After the session, Zertuche, now represented by the same counsel as defendants, ceased to plea bargain, and gave notice that he would claim his Fifth Amendment privilege against self-incrimination. His trial was severed without objection and he was not called to testify at the Carrillo trial.[5]

Assuming arguendo that Zertuche's statement was inadmissible hearsay, the defendants' complaint that the statement violates *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is without merit. Zertuche's statement was admitted with all references to the individual Carrillo defendants stricken. There were two references to Farm and Ranch Supply. In essence Zertuche stated that after a hurricane blew down the building which had been the headquarters of the Zertuche General Store, transactions were carried out in the Farm and Ranch Supply. At another point he referred to Farm and Ranch as run by Cleofas Gonzales. We find this overly technical violation of *Bruton* harmless beyond a reasonable doubt. The evidence admitted by the government to connect the Zertuche store with the Carrillo's other operations was overwhelming. *United States v. Vasquez,* 534 F.2d 1142 (5 Cir. 1976). The jury

could not have been persuaded to connect the two operations solely on the basis of this minimal reference. The effect of the statement, if any, was harmless error. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

## III.

Appellants also contend that the district court erred in refusing to compel the government to produce the tax returns of the two major government witnesses and in destroying a tape recording of an interview with Cleofas Gonzales, a major government witness, in refusing to quash one count of the indictment which stated a crime barred by the statute of limitations, and in refusing to grant the defendants' motion for indefinite continuance due to massive pretrial publicity.

■ Appellants rely upon the Jencks Act, 18 U.S.C. § 3500 and upon *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) in their claim that the government should have been compelled to produce the tax returns of important witnesses. Defendants' *Brady* challenge is inapposite because the Supreme Court has said that when statements of a government witness cannot be produced under the terms of the Jencks Act, they cannot be produced at all. *Palermo v. United States,* 360 U.S. 343, 351, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959). Unless the tax returns were substantial verbatim recitals they were not clearly statements[6] within the meaning of the Jencks Act. *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). Findings of fact in regard to the Jencks character of material, like other

---

**4.** Defendants also complain that the admission violated Rule 11(e)(6) Fed.Rules Crim.P. which prohibits introduction of a defendant's plea bargaining statement against *him.* Rule 11(e)(6) does not apply since the statement was not introduced against Zertuche.

**5.** After the trial Zertuche resumed plea bargaining and plead guilty. During the trial, however, defendant was technically unavaila-

ble under Rule 804(a)(1). That unavailability may have resulted to some extent from counsel's conscious trial strategy. Our decision does not, however, turn on that aspect of the case.

**6.** A statement under 18 U.S.C. § 3500(e) is: (1) a written statement made by [said] witness and signed or otherwise adopted or approved by him; . . . .

trial court findings of fact, may not be disturbed unless they are clearly erroneous. *See, e. g., Campbell v. United States,* 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); *United States v. Bell,* 457 F.2d 1231 (5 Cir. 1972). The tape recording of an interview with Cleofas Gonzales was destroyed prior to the time when criminal proceedings were contemplated by the government. Tape recordings from which affidavits and reports are made constitute notes in the course of an investigation. They need not, however, be preserved for Jencks Act discovery. *United States v. Pacheco,* 489 F.2d 554, 566 (5 Cir. 1974).

We also reject defendants' final claims. This Circuit has applied the six-year statute of limitations in an analogous situation. *United States v. Miller,* 491 F.2d 638 (5 Cir. 1974). The decision to deny defendants' requested indefinite continuance was within the trial court's sound discretion. *Thompson v. Fleming,* 402 F.2d 266 (5 Cir. 1968). We will not disturb its decision unless its choice is clearly erroneous. We find no such clear error here.

AFFIRMED.