UNITED STATES of America,
Plaintiff-Appellee,

v.

Joe Edd WILLIAMS,
Defendant-Appellant.

No. 81–2087
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 18, 1981.

Dale Long, Tyler, Tex. (court-appointed), for defendant-appellant. ·

Dane H. Smith, Asst. U. S. Atty., Tyler, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Appellant Joe Edd Williams drove a tractor-truck for Robert Rutledge of Houston, Texas. In October 1977, Williams "trip-leased" a flatbed trailer from Eagle Motor Lines in Tyler, Texas, and contracted to drive a load of wood products to Birmingham, Alabama. With another driver, James H. Boatwright, he set out for Birmingham. They arrived at the Eagle Mo-

---

tor Lines facility there, but, for reasons which the record does not explain, did not deliver their load. Instead, Williams and his companion turned around and headed for Texas.

On the way, while Boatwright was asleep, Williams momentarily lost control of his truck, which left the surface of the roadway. The load shifted and cascaded off of the trailer. Although damage to the trailer was slight, the cargo was substantially damaged. A Pearl, Mississippi contractor appeared, in somewhat curious circumstances, and purchased the damaged cargo from Williams.

Williams and the other driver then proceeded to remove all markings from the trailer.[1] When they had finished, nothing remained on the truck to identify it as the property of Eagle Motor Lines.

Williams and Boatwright eventually abandoned the trailer in Buffalo, Texas. It later was recovered by Eagle Motor Lines.

On May 9, 1979, a complaint was filed against Williams. He was arrested in July of that year. Those charges were dismissed on July 18, 1979. On August 4, 1980, appellant Williams waived indictment by a grand jury and pleaded guilty to an information charging him with transporting in interstate commerce a stolen motor vehicle in violation of 18 U.S.C. § 2312. He later was allowed to withdraw that guilty plea.

The grand jury subsequently returned a six-count indictment on October 9, 1980, charging violation of 18 U.S.C. §§ 2312 and 2314. Williams moved to dismiss on the ground that he had been denied a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161 et seq.[2] The trial court,

---

1. Testimony of James H. Boatwright, Williams' companion, at trial:

Q. Now, did Mr. Williams make any requests of you with regard to the trailer while it was there at Mr. Von Sanderford's house?
A. Yes, sir, he told me to take the headache rack off and the—well, I call them the side board racks, that they were extra weight.
Q. Is that why he told you to take them off?
A. No, the main idea—He told me to take the Eagle sign off the back, too.
Q. Okay. The back plate?
A. Yes, sir.
Q. Now, were these items damaged, Mr. Boatwright?
A. No, sir, not until I started taking the side racks off, and then they were damaged.
Q. You damaged the side racks taking them off?
A. Yes, sir.
Q. How did you have to take them off?
A. Well, the side racks I took off with a hammer and chisel, and the plate off the back. But the headache rack, all I had to do was just unbolt it.
Q. Now, what did you feel about the trailer after Mr. Williams had told you to take all these items off the trailer?
A. Well, I felt that we was going to try to bring it back to Texas just like we had planned.
Q. When Mr. Williams told you to take all these items off the trailer, did that, in fact, take all the markings of Eagle Motor Lines off of it?
A. Yes, sir.
Q. Do you remember whether or not he told you to obliterate the serial number on the trailer?
A. Yes, sir.
Q. Did you do so?
A. Get rid of the number off the trailer.
Q. What off the trailer?
A. Get the number off the trailer. It is just a number that Eagle Motor Freight uses to identify the trailer.
Q. All right.
   Now, a couple of days later did you leave Pearl, Mississippi, with Mr. Williams?
A. Yes, sir.
Q. Where did you all go to at that time?
A. We came back down 79 through Shreveport and Buffalo.
Q. You came back into Texas the same way you went out?
A. Yes, sir.

2. **Time limits and exclusions**

   (a) In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, or list it for trial on a weekly or other short-term trial calendar at a place within the judicial district, so as to assure a speedy trial.

   \*    \*    \*    \*    \*    \*

   (c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a mag-

after a hearing, denied the motion. The judge concluded that the delay between arrest and trial had not prejudiced Williams.

At trial, the government introduced (as plaintiff's exhibit # 3) business records of Eagle Motor Lines. Those records included an invoice, motor vehicle registration, bill of lading, a copy of a cashier's check, and a "verified statement" made February 6, 1981, by Charles Culver, who operated the trailer maintenance facility for Eagle at its Birmingham terminal. In this statement, Culver stated that he fixed the market value of the stolen trailer at $5,600. Culver did not testify at the trial, but Ray Williams, director of operations for Eagle and custodian of its records, testifying for the government, authenticated the statement.

On voir dire, defendant Williams objected to the admission of the "appraisal". The court overruled his objection. Subsequently an objection stressed the ground that witness Williams had no personal knowledge of the value of the trailer. Once again, the objection was overruled. The witness therefore testified that the trailer was worth $5600. This testimony was as convenient as it was necessary, for 18 U.S.C. § 2314 applies only to property worth more than $5000.

On the last day of trial, Williams filed a written motion asking the trial court to strike the verified statement from exhibit # 3 because it was by no means a proper business record. He also moved for a new trial. The court denied both motions.

■ Culver's verified statement setting the value of the trailer at $5,600 is, of course, pure hearsay. Thus it is inadmissible at trial unless it falls within one of the exceptions to the hearsay rule, Fed.R.Evid. 803(6).[3] Construing the rule, this court has declared, "it must be established that the records were kept according to a regular procedure and for a routine business purpose tending to insure accuracy, and that the records not consist merely of cumulations of hearsay or uninformed opinion." *U. S. v. Evans*, 572 F.2d 455, 490 (5th Cir. 1978), *cert. denied* sub nom., *Tate v. U. S.*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). This court has emphasized that the "primary emphasis of rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced." *U. S. v. Veytia-Bravo*, 603 F.2d 1187, 1189 (5th Cir. 1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980); *U. S. v. Scallion*, 533 F.2d 903, 920–921 (5th Cir. 1976) (Brown, J., concurring), *cert. denied sub nom. Jenkins v. U. S.*, 429 U.S. 1079, 97 S.Ct. 824, 50 L.Ed.2d 799 (1977), 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978); *U. S. v. Blake,*

---

istrate on a complaint, the trial shall commence within seventy days from the date of such consent.

\* \* \* \* \* \*

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

\* \* \* \* \* \*

(6) If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

**3.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

**(6) Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

488 F.2d 101, 105 (5th Cir. 1973) (construing Federal Business Records Act, 28 U.S.C. § 1732),[4] *Missouri-Pacific Railway Co. v. Austin*, 292 F.2d 415 (5th Cir. 1961).

Under these criteria, the statement of the trailer's value made by Culver cannot possibly be categorized as a business record for purposes of the hearsay rule. We point out that Culver made the statement almost three years after the incident in question. It was not made "in the course of a regularly conducted business activity" nor was it "the regular practice of that business activity to make the memorandum." All too clearly, Culver prepared the statement for the purposes of the trial alone. This statement possesses *none* of the indicia of trustworthiness necessary to remove it from the ambit of the hearsay exclusion. Trustworthiness being at the core to admissibility under Rule 803 exceptions, we cannot approve of the admission of such questioned, unreliable evidence at Williams' trial.

Since the statement of value does not fulfill the criteria of rule 803(6), it follows that the trial court, over adequate objections, abused its discretion by admitting it into evidence. In this case, that abuse of discretion also amounted to prejudicial error because the $5,000 minimum is a jurisdictional amount which constitutes an essential element of the offense with which Williams was charged. *See U. S. v. Chandler*, 586 F.2d 593 (5th Cir. 1978), *cert. denied sub nom., Morrow v. U. S.*, 440 U.S. 927, 99 S.Ct. 1262, 59 L.Ed.2d 483 (1979); *Abbott v. U. S.*, 239 F.2d 310 (5th Cir. 1956).

As the court's evidentiary error infected Williams' trial, we must reverse the conviction with instructions to grant a new trial.

REVERSED AND REMANDED.

**4.** There the Court stated: "It is the circumstances under which the records are recorded, kept, maintained and used that gives the reliability essential to the law's conclusion that without any independent recollections by those who made the succession of entries they are reliable, precisely because the business relies on them for important business judgments. This principle of business acceptance was recognized by our court in *Missouri Pacific Railroad Co.*" (citations omitted)