UNITED STATES of America, Plaintiff-Appellee,

v.

Eugene A. TAFOYA, Defendant-Appellant.

No. 83–1601.

United States Court of Appeals, Fifth Circuit.

April 8, 1985.

Rehearing and Rehearing En Banc Denied April 30, 1985.

Eugene A. Tafoya pro se.

Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Daniel Fromstein, Karen A. Morrisette, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GOLDBERG, TATE, and JOLLY, Circuit Judges.

TATE, Circuit Judge:

The defendant Eugene Tafoya appeals his conviction on two counts of violating 26 U.S.C. § 7206(1) by filing materially false tax returns for the tax years 1980 and 1981. An indictment charged that Tafoya willfully and falsely understated his gross income on his 1980 and 1981 tax returns.[1] The government proved these offenses at trial by evidence that Tafoya received payments from Edwin P. Wilson for assassinations Tafoya attempted while in the employ of Wilson.[2]

On appeal, Tafoya advances numerous grounds for reversal. His principal thrust involves the admissibility of evidence concerning the attempted assassinations. Tafoya contends that the evidence unfairly prejudiced him by transforming a tax prosecution into a murder prosecution. The government contends that the evidence was relevant and essential, proving the source of Tafoya's income and Tafoya's motive for not reporting the income. Because the trial court diligently and effectively restricted the government's proof to what was relevant to show source of income and motive, we conclude that Tafoya was not unfairly prejudiced. Finding Tafoya's other claims of error to be without merit, we affirm.

## I. *Facts*

Government witnesses testified that Tafoya was in the employ of Wilson in 1980 and 1981. James Dean, an employee of Wilson's, testified that he recruited Tafoya in 1979. Roberta Barnes, the manager of Wilson's London office, testified that Wilson instructed her to put Tafoya on the payroll. Two Wilson employees, John Heath and Alexander Raffio, testified concerning Tafoya's activities on behalf of Wilson. And Tafoya, who testified at trial, admitted that he met with, and worked for, Wilson in 1980 and 1981.

The key issue at trial was whether Tafoya was paid for his work.[3] Dean, who recruited Tafoya, admitted that Tafoya's initial assignment was undertaken for expenses only—and the hope of more remunerative future assignments. Tafoya testified that, indeed, Wilson promised payment for future assignments. Tafoya contended, however, that Wilson failed to fulfill his promise. According to Tafoya, he "fronted" the expense of costly international travel and received only partial reimbursement. In short, Tafoya testified that he reported no income from Wilson because Wilson cheated him out of salary. Tafoya also characterized one payment by Wilson as a loan or a gift.

---

1. Tafoya's wife, charged as a codefendant in each count, was tried with Tafoya and acquitted.

2. Wilson has been convicted of several offenses arising out of the business in which he employed Tafoya. *See United States v. Wilson,* 750 F.2d 7 (2d Cir.1984) (obstruction of justice and attempted murder of prosecutors and witnesses); *United States v. Wilson,* 732 F.2d 404 (5th Cir.1984) (illegal shipment of plastic explosives);

*United States v. Wilson,* 721 F.2d 967 (4th Cir. 1983) (illegal export of rifle and revolvers).

3. In 1980 and 1981 combined, Tafoya reported about $14,000 income. His returns reflected no income derived from employment by Wilson. At trial, the government offered evidence (specific payments and bank deposits) to show income from the Wilson employment of about $33,000 in 1980 and $55,000 in 1981.

The government introduced evidence to prove that Tafoya received income from Wilson. Roberta Barnes, Wilson's secretary, testified that Wilson instructed her in 1980 to put Tafoya "on the payroll" at an annual salary of $50,000. Barnes also testified (1) that she paid Tafoya $15,000 in cash in June 1980 and $8,000 in cash in about September 1980 and (2) that, at Wilson's direction, she caused a payment to Tafoya of $15,000. Further, John Heath, a high-level Wilson employee, testified that he delivered $10,000 in cash to Tafoya's wife in December 1980 and that Tafoya had claimed to have received other cash from Wilson in January 1981. Finally, several witnesses testified that Tafoya received $25,000 in cash in 1981 after a state arrest on attempted murder charges; these witnesses testified that Tafoya, through his wife, sought the $25,000 from Wilson for the purpose of paying legal fees and upon the rationale that Wilson owed $30,000 in unpaid wages.

The government also introduced corroborative evidence. On a credit card application submitted by Tafoya in 1980, he listed his annual income as $50,000. Wilson's secretary, Barnes, testified that $50,000 was a standard salary for many Wilson employees, and two employees testified to receipt of their $50,000 salaries. Barnes also testified that Tafoya had sought to have his salary placed directly into a numbered Swiss bank account. A certified public accountant determined, from an analysis of Tafoya's local bank account, that he deposited over $29,000 in 1980 and over $25,000 in 1981—well in excess of his reported income.

Tafoya implicitly concedes that a reasonable jury could, based on this inculpatory evidence, have found that he willfully understated his 1980 and 1981 income. He contends, nevertheless, that the jury's weighing of the evidence was improperly and unfairly skewed against him because

of inflammatory evidence of attempted killings.

## II. *Alleged Inflammatory Evidence*

At trial, the prosecutor [4] sought to introduce evidence showing that Tafoya, in the course of his employment with Wilson, (1) shot a Libyan residing in Colorado, (2) firebombed a home in Canada, and (3) sought to obtain poison in London for the purpose of killing an unknown person. At pretrial hearings, it was clear that Tafoya strenuously objected to the admissibility of this evidence. The district court announced that assassination evidence would not be admitted.

At trial, James Dean, a Wilson employee who recruited Tafoya, testified briefly concerning the Canadian firebombing. Tafoya objected, and the district court, outside the presence of the jury, sustained the objection. Upon the jurors' return to the courtroom, the district court strongly instructed them to disregard any mention that was made concerning the Canadian firebombing. Later in Dean's testimony, the district court also sustained Tafoya's objection to testimony concerning the Colorado shooting.

The next witness was Glenda Martinez, a friend of Tafoya's wife. The Tafoyas stayed at Martinez' home in Colorado when Tafoya went there to shoot the Libyan national. Tafoya's wife also stayed with Martinez when she delivered the money obtained from Wilson for legal fees. Tafoya vigorously objected to testimony from Martinez concerning the shooting incident. The district court sustained the objection.

Alexander Raffio, an electronics consultant who worked for Wilson, testified that Tafoya sought and obtained from him a serum sufficient to meet Tafoya's specification that it could kill a two-hundred-pound animal. The district court modified its earlier rulings and admitted the testimony for the purpose of showing Tafoya's employment relationship with Wilson, finding the

---

**4.** Two attorneys represented the United States at trial. In this opinion, we refer simply to "the prosecutor."

relevance of the evidence exceeded the possibility it would prejudice Tafoya unfairly. Tafoya's counsel declined an instruction limiting the jury's use of the evidence to this purpose, reasoning: "I would rather just let it slide by."

In the testimony of John Heath, a high level Wilson employee, the district court continued to modify its earlier rulings. The district court accepted the government's position that the evidence was important for the purpose of establishing that Tafoya worked for Wilson and that the payments to him were income. Over objection, the district court permitted Heath to testify that Tafoya told him he shot a person in Colorado twice in the head with a .22 caliber pistol. Heath further testified that Tafoya justified the use of a small weapon on the theory that two bullets in the head at close range, even if small caliber, should kill a person. The district court specifically refused to permit the government to bring out other details of the shooting, however, or to dwell on it. Moreover, when Heath used the word "assassin," the district court sustained an objection and instructed the jury to disregard the characterization.

Tafoya testified in his own defense. During cross-examination, the prosecutor asked Tafoya if he had "shot an individual just for expenses." Tafoya admitted the shooting but denied receiving the salary promised for the shooting. The prosecutor also examined Tafoya on the caliber of the bullets used to shoot the Libyan and on the use of a silencer.

The prosecutor strayed from the district court's guidelines in an unexpected question. Cross-examining Tafoya, the prosecutor asked: "After that incident in [Colorado], by the way, isn't it correct that [the Libyan] lost the sight of one of his eyes as a result of that shooting?" The district court immediately sustained Tafoya's objection, admonished the prosecutor, and instructed the jury:

Ladies and Gentlemen of the jury, you will disregard any detail and the response about whether or not a victim lost the sight of his eyes or eye.

. . . . .

[T]he court instructs you specifically that this defendant is not on trial for any other offense other than the alleged offenses ... in the indictment. He is not on trial for any offense involving anything else. And you will not consider the evidence ... of any alleged extraneous offenses as being admitted in this trial for the purposes of determining the issues that you will have to determine.

 Based on this review, we discern no reversible error. Evidence of a defendant's unindicted criminal behavior may be admissible if it is *not* offered to prove that a defendant has a bad character and therefore probably is guilty of a charged offense, if the evidence is probative of a material fact and therefore relevant, and if the probative value of the evidence is not outweighed by the likelihood of unfair prejudice. *United States v. Beechum*, 582 F.2d 898, 911–15 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The district court's decision to admit such evidence—termed "extrinsic offense evidence" in *Beechum* —should not be overruled on appeal in the absence of abuse of discretion. *United States v. Barron*, 707 F.2d 125, 128 (5th Cir.1983). "This Court is unusually mindful of this standard of review in a case like the instant one where the question of admissibility is difficult and where the trial judge carefully weighed the appropriate criterion in light of the proof presented." *United States v. Emery*, 682 F.2d 493, 497 (5th Cir.1982), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 615 (1982).

 Evidence of the fact of Tafoya's assassination efforts was relevant.[5] Tafoya claimed to have received only expenses, loans, or gifts. A jury reasonably could assess the credibility of Tafoya's claim dif-

---

**5.** This distinguishes *United States v. Krezdorn*, 639 F.2d 1327, 1331–32 (5th Cir.1981), upon which Tafoya relies. In *Krezdorn*, we found

extrinsic offense evidence inadmissible because it was irrelevant.

ferently depending on the nature of Tafoya's employment. It is unlikely that one would attempt three killings in exchange largely for expenses—or continue killings for over a year if not paid for the first one. Moreover, the nature of Tafoya's employment was probative of his motive to conceal the employment by failing to report illegal income. Finally, and on the simplest level, the government had to show the jury that Tafoya did *something* to earn the income it alleged he failed to report. This is a frequent problem in tax prosecutions, and prosecutors consistently have been permitted to prove the source of unreported income, a rule that here permitted evidence to establish the job for which Tafoya was hired and paid. *E.g., United States v. Carrillo*, 561 F.2d 1125, 1127 (5th Cir.1977) (prosecution for filing false tax return by failing to report income would be unintelligible without evidence of source of income, evidence being "inextricably tied to the basic elements of proof of filing false tax returns").[6]

Notwithstanding its relevance, the assassination evidence had an obvious capacity to prejudice Tafoya unfairly. We do not, however, find an abuse of discretion in the district court's conclusion (expressed on the record) that the probative value of the evidence outweighed the potential for unfair prejudice. The district court carefully scrutinized the challenged evidence—excluding unnecessary and unfairly prejudicial details and at every stage maintaining the firm control over the fairness of the trial mandated in *United States v. Young*, —— U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). The district court assured that Tafoya was convicted, if at all, upon evidence of tax violations and not upon evidence of unindicted crimes. To this end, it gave clear curative, limiting, and final instructions to the jury.[7] In closing argument, Tafoya's lawyer and the prosecutor both emphasized that the jury was to decide only a tax case.[8] We have searched the record and are convinced that the as-

---

**6.** *Carrillo* is typical of many cases reaching the same result. *See United States v. Soulard*, 730 F.2d 1292, 1302–03 (9th Cir.1984); *United States v. Heyward*, 729 F.2d 297, 301 (4th Cir.1984); *United States v. Wright*, 667 F.2d 793, 799–800 (9th Cir.1982); *United States v. Ochs*, 595 F.2d 1247, 1260 (2d Cir.1979), *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1980); *United States v. Rothstein*, 530 F.2d 1275, 1279 (5th Cir.1976); *United States v. Garcilaso de la Vega*, 489 F.2d 761, 765 (2d Cir.1974); *United States v. Vario*, 484 F.2d 1052, 1056 (2d Cir.1973), *cert. denied*, 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 753 (1974); *United States v. Tunnell*, 481 F.2d 149, 151 (5th Cir.1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974); *United States v. Smith*, 335 F.2d 898, 901 (7th Cir. 1964), *cert. denied*, 379 U.S. 989, 85 S.Ct. 700, 13 L.Ed.2d 609 (1965); *United States v. Marquez*, 332 F.2d 162, 166 (2d Cir.1964), *cert. denied*, 379 U.S. 890, 85 S.Ct. 162, 13 L.Ed.2d 94 (1964).

The concept of "inextricable intertwining" mentioned in *Carrillo* is reflected in statements in other decisions that evidence of other offenses "inextricably intertwined" with evidence of the charged offense is not "extrinsic offense" evidence within the meaning of *Beechum*. *E.g., United States v. Nichols*, 750 F.2d 1260, 1264–65 (5th Cir.1985); *United States v. Webster*, 750 F.2d 307, 336 (5th Cir.1984). We see no need here to parse possible distinctions between extrinsic offense evidence and inextricably intertwined evidence of other offenses because the relevance and prejudice analyses of *Beechum*

must be performed in any event. Thus, we apply the *Beechum* analysis.

**7.** The final instruction was:

You are instructed that the Defendants are only on trial for the crimes charged in the indictment and not for any other activities they or either of them may have engaged in. You are further instructed that you are to make no inference whatsoever as to the guilt of the defendants on the charges in this indictment because of the nature of the activities they or either of them may have engaged in.

**8.** In closing argument, the prosecutor did not emphasize Tafoya's assassination efforts. The prosecutor mentioned them only once, briefly, in contending that one does not undertake such activity for expenses only. Reading the entire closing argument, it appears that the prosecutor was careful not to exploit the sensitive evidence.

Tafoya does complain that the prosecutor exploited the assassination unfairly by arguing to the jury that Tafoya had "dishonorably served his country." This comment skirted impropriety, but Tafoya did not object to it. Moreover, the prosecutor was engaged in an obvious effort to meet Tafoya's consistent attempt to imply that his innocence was shown by his twenty-one years' military service and by his mistaken belief that, while working for Wilson, he actually was engaged (by way of the CIA) in the service of the United States. Accordingly, we find no basis for reversal. *See United States v. Young*,

sassination evidence was but a part of the government's proof and that the district court's rulings and instructions maintained the jury's proper focus.[9]

■ We do, finally, express misgiving with the prosecutor's strategy in two respects. First, the question concerning the blinding of the Libyan in the Colorado shooting was blatantly improper. It violated the district court's ruling to avoid the unnecessary details of the shooting, and, though asked in the heat of cross-examination, the prosecutor must have appreciated the impropriety of the question. We do not find a basis for reversal, however, because the district court promptly gave the jury an effective curative instruction. *See United States v. Irwin*, 661 F.2d 1063, 1071 (5th Cir.1981), *cert. denied*, 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982); *United States v. Rojas*, 537 F.2d 216, 222 (5th Cir.1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977).

■ Second, the prosecutor repeatedly required the district court to exclude details of Tafoya's assassination efforts. The district court made plain its intent to exclude the potentially prejudicial details of Tafoya's assassination efforts. At several turns the prosecutor bridled against this limitation but was effectively restrained by the district court.[10] The district court's attentiveness avoided the necessity of a reversal. However, we caution prosecutors that tax cases are not to be transformed—by evidence, argument, or implication—into trials for other crimes. Some evidence of income source is necessary to prove a false return case and to make it intelligible, but emphasis of the illegal source of income or dwelling on lurid details is inappropriate. If it distracts a

jury's focus, we will not hesitate to reverse.

### III. *Miscellaneous Claims of Error*

Tafoya claims that the government sought to prove unreported income by evidence of bank deposits but, fatally for the government, failed to show his "opening net worth" as he contends is required in prosecutions based on the bank deposit method of proof. *See Holland v. United States*, 348 U.S. 121, 135–36, 75 S.Ct. 127, 135, 99 L.Ed. 150 (1964); *United States v. Hall*, 650 F.2d 994 (9th Cir.1981). We reject this claim because the government actually based the prosecution on proof of specific payments of money to Tafoya. The bank deposits evidence was admitted only to corroborate the evidence of specific payments, as approved by *United States v. Horton*, 526 F.2d 884, 886–87 (5th Cir. 1976), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976). The district court instructed the jury that "consideration of the evidence of total bank deposits should be limited to corroboration of the specific items deposited."

■ Tafoya also claims that the district court erred in admitting two memoranda pursuant to the hearsay exception governing admissions of records of regularly conducted activity. *See* Fed.R.Ev. 803(6). The memoranda reflected billings by Wilson to Libya for salary Wilson paid Tafoya. Wilson's secretary, Barnes, authenticated the memoranda and testified that they were prepared and maintained in the regular course of business. Another Wilson employee, Raffio, testified that the memoranda were typical of those prepared by Wilson to obtain payment from Libya. Tafoya contends, however, that other evidence showed Wilson sometimes falsified

---

— U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

**9.** Tafoya complains of other alleged prosecutorial misconduct. We have reviewed the alleged misconduct and find that the conduct was proper or not possibly prejudicial.

**10.** The prosecutor pushed the district court and proper examination to the limit with the ques-

tions concerning the caliber of pistol Tafoya used to shoot the Libyan in Colorado and the fact that he shot the Libyan twice in the head. We do not, however, find an abuse of discretion in the admission of these details because (1) other unnecessary details were excluded and (2) these particular details were relevant (corroborating both Tafoya's involvement in the shooting and Heath's testimony that Tafoya admitted the involvement and these details).

billing memoranda and that, therefore, "the source of information ... indicate[s] lack of trustworthiness," rendering the memoranda inadmissible under Fed.R.Ev. 803(6). We cannot agree. Rule 803(6) vests discretion in the trial court to determine admissibility. *United States v. Veytia-Bravo,* 603 F.2d 1187, 1189 (5th Cir. 1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980). The record supports the district court's exercise of that discretion in favor of admissibility.[11] (Of course, admissibility of the memoranda did not prevent Tafoya from arguing that, upon all the evidence, the jury should not credit the evidence or give it any weight.)

Tafoya urges that the prosecutor "committed perjury" during closing argument. The prosecutor argued that Tafoya denied Raffio's allegation that Tafoya obtained poison because he could produce no "plausible explanation" for obtaining poison. Tafoya contends this was equivalent to a testimonial assertion of an untruth. We find the contention to be frivolous.

■ Tafoya also contends that the district court improperly shifted the burden of proof in its instruction to the jury on Tafoya's testimonial contention that he received no income from Wilson. The instruction was:

[T]he defendant, Eugene A. Tafoya, made the following contention: the only money that he received in 1980 and 1981 from Edwin Wilson consisted of either gifts, loans, or reimbursement for business travel on a penny-for-penny basis. He contends that no money was paid to him for his employment by Wilson as such. If you believe this contention or

have a reasonable doubt in regard thereto, then you must acquit....

This instruction did not tell the jury that Tafoya bore the burden of proof. The jury was told to consider all of the evidence, including Tafoya's testimony, and to acquit Tafoya if there was a reasonable doubt that payments from Wilson were not income.[12] The instruction, therefore, was favorable to Tafoya and did not shift the burden of proof.[13]

■ Finally, Tafoya claims that the district court erred in issuing a written judgment and commitment order making the sentence on the two counts of tax fraud consecutive to each other. At the sentencing proceeding, the district court orally stated that it sentenced Tafoya to three years' custody on count one and to three years' custody on count two. The district court did not mention whether the sentences were to be served concurrently or consecutively. Tafoya invokes the rule that sentences are concurrent unless clearly stated to be consecutive and that a change in sentence violates double jeopardy guarantees. *See United States v. Naas,* 755 F.2d 1133, 1135–36 (5th Cir.1984). However, this rule does not apply where the oral pronouncement of sentence (here, made on August 18) is ambiguous or silent as to the consecutive-concurrent issue, but where the written sentence entered as an immediate consequence (here, on August 19) contains clear language clarifying that consecutive sentences were intended. *Schurmann v. United States,* 658 F.2d 389, 391 (5th Cir.1981). As noted, in *Schurmann,* under circumstances similar to the present: a clear oral statement of intent to impose concurrent sentences

---

**11.** Tafoya relies on *United States v. Williams,* 661 F.2d 528, 531 (5th Cir.1981), but *Williams* held only that a statement prepared "for the purposes of trial alone" and possessing *"none* of the indicia of trustworthiness" was inadmissible.

**12.** Elsewhere in its instructions, the district court directly addressed the burden of proof concept and unmistakably informed the jury that the government bore the burden of proving each element of the charged offenses beyond a reasonable doubt.

**13.** Tafoya complains also of an instruction "that a false statement as to gross income ... is a materially false statement regardless of the amount of gross income that is underreported." In Tafoya's view, this instruction improperly directed a verdict on the element of the falseness of his tax returns. We simply do not see how this is so. The instruction merely defined the element of materiality.

would prevail over a later, contrary written ruling; however, when (as here) the oral pronouncement is silent and the immediately-consequent written sentence clearly states the district court's intent to impose consecutive sentences, then the presumption for concurrent sentences does not apply because of the court's clear statement to the contrary. *Id.* We find no error.

IV. *Conclusion*

For the foregoing reasons, we AFFIRM Tafoya's conviction.

AFFIRMED.