T.C. Memo. 1998-192


UNITED STATES TAX COURT


LUCILA NOVOA, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket No. 2560-97.                      Filed May 26, 1998.


Thomas F. Dilullo, for petitioner.

Robert A. Fee, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, Judge:  For the 1993 taxable year, respondent
determined a deficiency of $18,806 in petitioner's Federal income
tax and an accuracy-related penalty of $3,761.

Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by the parties,[1] the issues remaining for decision are: (1) Whether petitioner had unreported income from her trucking business of $25,648[2] as determined by respondent or some lesser amount; (2) whether respondent properly increased petitioner's net rent income by $6,166; (3) whether petitioner had gain of $2,350 or some lesser amount from the sale of a truck held for use in her trucking business; and (4) whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a).

We hold that petitioner had $17,449 of unreported income, reflecting a reduction of $8,199 that petitioner received from nontaxable sources.  We hold that petitioner had additional net rent income of $6,134 and gain of $2,350 on the sale of her truck.  Finally, we hold that petitioner is liable for the accuracy-related penalty.

---

[1] Petitioner claimed a $2,117 income tax credit for the purchase of a diesel-powered vehicle and for the purchase of gasoline and diesel fuel pursuant to sec. 34.  Respondent disallowed the credit in the statutory notice of deficiency.  On brief, petitioner conceded that she is not entitled to the fuel tax credit under sec. 34.  Petitioner also claimed the earned income credit.  Whether petitioner is eligible for the earned income credit, taking into account the increase to petitioner's income resulting from this decision, is to be determined in the Rule 155 computation.  Respondent's concessions relate to the reconstruction of petitioner's income and are explained below.

[2] All dollar figures are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference. Petitioner resided in North Bergen, New Jersey, at the time the petition was filed.

A. Trucking Business

During the taxable years 1992 and 1993, petitioner owned and operated her own trucking business as a sole proprietor. At the beginning of 1993, petitioner owned two Mack trucks. Petitioner drove at least one of the trucks herself to transport cargo containers for Cappy's Transport, Inc. (Cappy's) on behalf of Goya Foods, Inc., from Goya's processing plant in Secaucus, New Jersey, to Port Newark for shipment overseas.[3] Petitioner worked as an independent contractor and was paid according to the number of containers delivered. Petitioner controlled the conditions of her employment, working as little or as much as she pleased. Petitioner failed to maintain adequate books and records of the gross income and expenses of her trucking business.

On Schedule C of her 1992 income tax return, petitioner reported gross receipts of $68,145 and net business income of $16,689 from her trucking business.

_____

[3] The record does not disclose how or whether the other truck was being used while petitioner was making deliveries for Cappy's, or whether the rate at which the one truck was being driven by petitioner left time for someone else to drive it during the taxable year.

On her 1993 income tax return, petitioner claimed the standard deduction and reported gross receipts and expenses of her trucking business on Schedule C in the following amounts:

| | |
|---|---:|
| Gross receipts | $44,275 |
| Expenses | |
| Tolls | 2,900 |
| Depreciation | 3,000 |
| Insurance | 1,300 |
| Repairs & maintenance | 1,600 |
| Supplies | 1,335 |
| Taxes (registration) | 919 |
| Wages | 3,000 |
| Other expenses (fuel, tires, parking, road tax) | 14,260 |
| Total expenses | 28,314 |
| Net business income | 15,961 |

At an unspecified time in 1993, petitioner sold one of her trucks for $12,000. In July 1991, petitioner had purchased the truck for $14,000 and had paid $500 for a truck warranty. Petitioner had claimed depreciation deductions on the truck of $1,450 and $2,900 for the 1991 and 1992 taxable years, respectively. Petitioner did not report the sale of the truck on her 1993 tax return.

B. Rental Activity

During 1993, petitioner purchased a two-family house in North Bergen, New Jersey, and on April 1, 1993, she moved into the house. Petitioner paid the purchase price of $170,000 for the house in the following manner:

| | |
|---|---:|
| Initial deposit on purchase | $22,500 |
| Payment at closing of title | 22,500 |
| Mortgage loan proceeds | 125,000 |
| Purchase price | 170,000 |

On December 22, 1992, petitioner wrote a check for $20,500 to her attorney, William E. Powers, which was applied to the initial deposit on the house.[4]  The check cleared on January 6, 1993.  On March 30, 1993, the purchase of the house closed and petitioner paid $29,501 at the closing.  Of this amount, $22,500 was a further downpayment on the house, and $6,977 represented closing costs paid to the mortgage lender, which included $2,500 as a prepayment of interest, referred to as "points", on the mortgage. During 1993, petitioner spent $5,893 on property improvements to the house.

Beginning in May 1993, petitioner rented one-half of the house to a tenant.  Petitioner reported rent income and expenses on the Schedule E of her 1993 return as follows:

| | |
|---|---|
| Rents received | $5,600 |
| Expenses | |
| Insurance | 996 |
| Mortgage interest | 6,600 |
| Repairs | 4,000 |
| Supplies | 3,407 |
| Taxes | 2,128 |
| Other (water, sewer, gas) | 1,681 |
| Depreciation expense | 3,588 |
| Total expenses | 22,400 |
| Income (loss) | (16,800) |
| 50 percent correction | |
| only ½ of residence rented | (8,400) |

Petitioner reported expenses paid for the entire house, even though she only rented one-half of it to a tenant.  To

[4] The record does not disclose the source of the additional $2,000 paid as an initial deposit.

correct the overstatement of expenses of the rental portion, she divided the loss by one-half and reported a loss of $8,400 instead of $16,800. Petitioner has acknowledged in the stipulation of facts that her procedure of dividing the loss in half results in a computational error that overstates her loss by $2,800, because it also has the effect of improperly reducing her gross rental income by one-half.

In adjusting petitioner's Schedule E rent income, respondent disallowed some expenses while allowing others in excess of the amounts stated on the return. Respondent adjusted petitioner's rent income as follows:

| Expense Item | Expense Per Return | Allowed |
|---|---|---|
| Insurance | $996 | $499 |
| Repairs | 4,000 | 0 |
| Supplies | 3,407 | 0 |
| Taxes | 2,128 | 3,795 |
| Gas | 1,113 | 0 |
| Depreciation | 3,588 | 4,206 |
| | 15,232 | 8,500 |

| | | |
|---|---|---|
| Total disallowed expenses | | 6,732 |
| 50 percent business allocation | | x .50 |
| Schedule E expense disallowance | | 3,366 |
| Schedule E computational error | | 2,800 |
| Schedule E adjustment in the notice of deficiency | | 6,166 |

## C.  Petitioner's Daughters

Petitioner has two daughters, Emelina and Jennifer, who in 1993 were 25 and 18 years old, respectively. Emelina and

Jennifer lived with petitioner in her rented apartment in West New York, New Jersey, from January 1 through March 30, 1993; Jennifer and petitioner then moved into the recently purchased house in North Bergen, New Jersey. Emelina continued to live in petitioner's apartment through the end of 1993. After petitioner moved out of her apartment, she kept her lease on the apartment and continued to make rental payments of $319 a month to the landlord. While Emelina occupied the apartment through the end of 1993, she reimbursed petitioner for the monthly rental payments.

During 1993, Jennifer was a high school student and also worked part time at the Drug Festival, Inc., in Union City, New Jersey. Jennifer would cash her weekly paycheck, keep $5 for herself, and give the remainder to petitioner. Jennifer earned $6,329 of gross wages for the 1993 calendar year. A total of $1,252 was withheld from her wages for Federal, State, and payroll taxes. Petitioner used Jennifer's wages to pay household expenses and buy clothing for Jennifer.

D. Reconstruction of Income

In August 1995, Internal Revenue Service Tax Auditor Geneva Dickerson (Ms. Dickerson) began an audit of petitioner's 1993 income tax return. After petitioner failed to provide adequate books and records of her trucking business, Ms. Dickerson reconstructed petitioner's income for the 1993 calendar year using the bank deposit and cash expenditure method and determined

that petitioner had unreported income in the amount of $26,987. On November 26, 1996, respondent issued a statutory notice of deficiency. Ms. Dickerson's report reconstructing petitioner's income was attached. The notice of deficiency listed the following adjustments to petitioner's income: (1) $44,471 increase in Schedule C net profit resulting from the $26,987 of unreported income determined by Ms. Dickerson's reconstruction of petitioner's income and the disallowance for lack of substantiation of $17,484 in deductions for Schedule C business expenses; (2) $2,350 increase of "other income", representing petitioner's gain on the truck sale; and (3) $6,166 increase in rent income, resulting from petitioner's $2,800 computational error plus $3,366 of expenses disallowed for lack of substantiation.

Following pretrial discovery, respondent made several adjustments to Ms. Dickerson's reconstruction of petitioner's income and recomputed petitioner's unreported income. Respondent determined that petitioner had unreported income of $25,648, $1,339 less than the unreported income originally determined by Ms. Dickerson and set forth in the statutory notice of deficiency.

The following table sets forth Ms. Dickerson's initial reconstruction of petitioner's unreported Schedule C income and respondent's reconstruction and revised computation:

| Ms. Dickerson's Reconstruction | | Respondent's Revised Reconstruction | |
|---|---|---|---|
| Bank Deposit Portion | | Bank Deposit Portion | |
| Total deposits | $85,924 | Total deposits | $87,853 |
| Nontaxable deposits | | Nontaxable deposits | |
| Proceeds of truck sale | 12,000 | Proceeds of truck sale | 12,000 |
| | | Interbank transfers | 22,500 |
| Net taxable deposits | 73,924 | Net taxable deposits | 53,353 |
| Cash Expenditure Portion | | Cash Expenditure Portion | |
| Total expenditures | 85,932 | Total expenditures | 98,441 |
| Check disbursements and savings account withdrawals | 89,773 | Check disbursements and savings account withdrawals | 69,202 |
| | | Less disallowed Schedule E expenses | (6,166) |
| Cash outlays[1] | 3,841 | Cash outlays | 23,073 |
| Recomputed income | 77,765 | Recomputed income | 77,765 |
| Reported income | 50,778 | Reported income | 50,778 |
| Unreported income | 26,987 | Unreported income | 25,648 |

[1] Ms. Dickerson erroneously concluded that petitioner had $3,841 of cash outlays, when $3,841 was the excess of total checks written over expenditures.

Respondent's recomputation of petitioner's unreported Schedule C income primarily differed from Ms. Dickerson's initial computation in two ways. First, respondent subtracted interbank transfers between petitioner's accounts totaling $22,500, representing transfers from her savings account to her checking

account in order to make payments at the closing of her house. The $22,500 was then subtracted from the total checks disbursed amount that was used to calculate petitioner's cash expenditures, thereby not altering the amount of petitioner's unreported income.[5]

Second, respondent allowed Schedule C deductions of $28,314 claimed by petitioner for business expenses in their entirety, unlike Ms. Dickerson's report, which allowed only $10,830 of the claimed Schedule C deductions. The allowance of the additional Schedule C deductions of $17,484 first reduced respondent's Schedule C net income adjustment from $44,471 to $26,987, the amount of petitioner's unreported Schedule C gross income. The allowance of the remaining Schedule C deductions also led respondent to add $25,314[6] of paid business expenses to petitioner's cash expenditures for purposes of computing her unreported income, thereby increasing her unreported income in a corresponding amount.[7]

---

[5] Respondent's subtraction of $22,500 of bank deposits led to a corresponding $22,500 increase in cash expenditures insofar as the amount of total checks disbursed was reduced by $22,500 and petitioner's cash expenditures were calculated by subtracting the amount of total checks disbursed from total expenditures.

[6] The Schedule C included a $3,000 depreciation deduction, a noncash expenditure, which explains why only $25,314 of the $28,314 was included in petitioner's cash expenditures.

[7] The following is an abbreviated explanation of how respondent's determination of petitioner's unreported income was revised from the amount contained in the statutory notice.
(continued...)

In January 1993, petitioner's friend, Vilma Reye, lent her
$500.  In April 1993, Petitioner repaid the loan in its entirety.

OPINION

A.  Respondent's Reconstruction of Income

Section 6001 requires all taxpayers to maintain adequate
books and records of taxable income.  In the absence of adequate
books and records, the Commissioner is authorized to reconstruct
the taxpayer's income by any reasonable method that clearly
reflects the taxpayer's income.  Sec. 446(b); Holland v. United

---

[7](...continued)

| | |
|---|---|
| Initial unreported income in the statutory notice | $26,987 |
| Cash expenditure increase for additional Schedule C deductions allowed | +14,484 |
| Decrease in bank deposits for interbank transfers | -22,500 |
| Increase in cash expenditures resulting from decrease in total checks disbursed | +22,500 |
| Decrease in cash expenditures resulting from decrease in total expenditures relating to overstatement of payment at closing of the house in the statutory notice | -1,975 |
| Decrease in cash expenditures relating to Schedule E expenses disallowed | -6,166 |
| Adjustment for $3,841 error in Ms. Dickerson's report.  Instead of being a cash outlay, such amount represents an excess of total checks disbursed over total expenditures | -7,682 |
| Revised unreported income | 25,648 |

States, 348 U.S. 121, 130-132 (1954); Parks v. Commissioner, 94 T.C. 654, 658 (1990).

One of these methods, whose propriety is well established, is the bank deposits and cash expenditure method.  Parks v. Commissioner, supra; Nicholas v. Commissioner, 70 T.C. 1057, 1065 (1978).  Under this method, respondent estimates the taxpayer's cash expenditures and determines the amount of bank deposits for the taxable years at issue in order to arrive at petitioner's income, which is then compared with petitioner's reported income to determine the amount of petitioner's unreported income.  See United States v. Abodeely, 801 F.2d 1020, 1023-1025 (8th Cir. 1986).  The method is premised on the assumption that the taxpayer has disposed of unreported income by depositing part of it into bank accounts and by making cash expenditures of the other part.

In the present case, petitioner did not keep adequate books and records.  Petitioner did not retain a bookkeeper or accountant and did not keep formal books of account recording the day-to-day receipt of income and payment of expenses of her trucking business.[8]  Respondent, therefore, properly used the

_____

[8] Petitioner testified that she provided her return preparer a handwritten list of the business expenses of her trucking business.  Petitioner also proffered into evidence copies of receipts for the cash purchase of diesel fuel totaling $8,069, and copies of truck repair and maintenance expense receipts totaling $3,003.  Respondent has conceded the deductibility of all trucking business expenses claimed by petitioner, but treated
(continued...)

bank deposits and cash expenditure method to reconstruct petitioner's income and to determine that petitioner had unreported income for the 1993 taxable year.[9]  The reconstruction is especially reliable in the present case because petitioner either stipulated or verified through her testimony the amount of deposits made to her bank accounts and the amount of cash that she expended during the 1993 calendar year.

Generally, respondent's determination in a statutory notice of deficiency is entitled to a presumption of correctness.  Welch v. Helvering, 290 U.S. 111, 115 (1933).  The fact that respondent's revised reconstruction reduces the amount of petitioner's unreported income does not affect the presumption of correctness attached to respondent's original determination of petitioner's tax deficiency, to the extent not reduced by respondent's revision.  Gobins v. Commissioner, 18 T.C. 1159, 1168-1169 (1952), affd. per curiam 217 F.2d 952 (9th Cir. 1954).

Petitioner does not argue that respondent's determination is not entitled to a presumption of correctness.[10]  Instead,

---

[8](...continued)
all such expenses, except depreciation, as cash expenditures for purposes of reconstructing petitioner's income.

[9] Respondent's reconstruction of income is a revised version of the Tax Auditor's reconstruction that was attached to the statutory notice of deficiency.  Respondent's revised reconstruction determines petitioner to have less unreported income than the original reconstruction.  See supra pp. 8-9.

[10] In cases of unreported income, the Court of Appeals for
(continued...)

petitioner argues that she effectively rebutted the presumption of correctness by presenting competent and relevant evidence showing that the determination is erroneous. We do not completely agree.

At trial, petitioner proffered into evidence a copy of a Form 1099-MISC (Form 1099), listing Cappy's as the payor and petitioner as the recipient of $44,275 of nonemployee

---

[10](...continued) the Third Circuit, the circuit to which this case is appealable, recognizes an exception to the general rule that respondent's determination is entitled to a presumption of correctness. Anastasato v. Commissioner, 794 F.2d 884, 887 (3d Cir. 1986), vacating T.C. Memo. 1985-101. In cases of unreported income, whether derived from legal or illegal sources, the Commissioner must provide some predicate evidence connecting the taxpayer to an income-producing activity in order to prevent the determination from being a "naked assessment" without any factual foundation. Id. Respondent's proper reconstruction of a taxpayer's income can also provide the factual foundation necessary to entitle respondent's determination to a presumption of correctness. See Portillo v. Commissioner, 932 F.2d 1128, 1133-1134 (5th Cir. 1991) ("before we will give the Commissioner the benefit of the presumption of correctness, he must engage in one final foray for truth * * * such as by showing the taxpayer's net worth, bank deposits, cash expenditures"), affg. in part and revg. in part T.C. Memo. 1990-68, citing Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), revg. 67 T.C. 672 (1977); see also Hoffman v. Commissioner, 298 F.2d 784, 786 (3d Cir. 1962) (respondent's reconstruction of income was evidence of petitioner's unreported income entitling respondent's determination to a presumption of correctness), affg. in part T.C. Memo. 1960-160; Tokarski v. Commissioner, 87 T.C. 74, 76 (1986) (where respondent determined that petitioner had unreported income using the bank deposits method, respondent was not required to produce evidence linking petitioner's income to an income producing activity); Alvarez v. Commissioner, T.C. Memo. 1995-414 (distinguishing cases that required linking unreported income to an income-producing activity where respondent reconstructed petitioner's income).

compensation.[11]  The total payment reported on the Form 1099 is identical to the amount of gross receipts reported by petitioner on her 1993 Schedule C for her trucking business.  Petitioner also testified that Cappy's paid her by check, that Cappy's was her only client, and that she had no other earnings from the operation of her trucking business during 1993.

Petitioner's presentation of the Form 1099 together with her testimony does not effectively rebut the presumption of correctness attached to respondent's reconstruction of income. First, the Form 1099, in and of itself, does not prove that petitioner did not have other customers in her trucking business and does not prove that she did not have any other income from the use and ownership of the two trucks.  Second, although petitioner's testimony that she did not perform services for clients other than Cappy's and that she had reported all her earnings from her trucking business in 1993 on her return seems credible, nevertheless her testimony does not rebut respondent's determination, insofar as she might have had unreported rental

---

[11] Respondent objected to the admission into evidence of the Form 1099, and the parties did argue the question of its admissibility in their initial briefs.  Although at trial petitioner did pull out of her purse a copy of the Form 1099 (introduced into evidence at trial as Exhibit 19), a copy of the same Form 1099 was attached to Exhibit 2-B, a copy of petitioner's 1993 income tax return that was part of the stipulation of facts, which states that all evidentiary objections to stipulated exhibits are waived unless specifically expressed therein.  Respondent did not raise any evidentiary objections to Exhibit 2-B in the stipulation of facts. Therefore, the Form 1099 was properly admitted into evidence.

income from her ownership of the trucks and their use by other persons.

We believe petitioner's testimony--in response to the questions she was asked at trial--literally to be true, but it does not cover all possible sources of income from the use of her truck or trucks during the taxable year. Petitioner did not explain how two Mack trucks were used in her trucking business during a portion of 1993. Petitioner's testimony does not exclude the possibility that she drove one truck herself to provide transportation services for Cappy's and allowed someone else either to use her truck when she was not driving it,[12] or to use the other truck to provide transportation services for others, giving rise to rent income rather than earned income.[13] In this way, petitioner's testimony that she had no other clients and that she reported all her earnings would literally be true, and still fail to rebut the presumption of correctness of respondent's determination that petitioner had unreported income from another source whose likely existence is disclosed by the record.

---

[12] We note that, for the immediately preceding year, petitioner reported gross receipts of $68,145 from her trucking business, approximately $24,000 more than she reported for the taxable year in issue.

[13] Petitioner's failure to report the sale of the second Mack truck raises from another angle the question of whether her failure to report income was connected to income generated by other use or rental of the truck that was sold.

Insofar as petitioner's testimony implied and was intended to convey the impression that she reported all her income on her 1993 return, we find her testimony improbable and questionable, in light of respondent's reconstruction evidencing the receipt of income exceeding the amounts petitioner received from Cappy's. See Demkowicz v. Commissioner, 551 F.2d 929, 931 (3d Cir. 1977) (this Court is not bound to accept taxpayer's testimony if it finds it to be either improbable, unreasonable, or questionable), revg. T.C. Memo. 1975-278; Sundel v. Commissioner, T.C. Memo. 1998-78.

Petitioner further argues that respondent overlooked several nontaxable sources of income for the year in issue. Petitioner contends that the inclusion of such amounts overstated respondent's determination of her unreported income. Specifically, petitioner testified that after she moved out of her apartment, her daughter Emelina continued to live in the apartment from April through December 1993. Petitioner continued to pay the rent on the apartment for those 9 months. We find that Emelina reimbursed petitioner for the rent on the apartment for those 9 months in the amount of $319 per month, totaling $2,871 for the 1993 year.

Petitioner also testified that her daughter Jennifer, who lived with her and worked part time at the Drug Festival, Inc., would cash her paycheck, keep $5 and give the remainder to her mother. Jennifer testified at trial about her practice of

turning over to her mother the bulk of the proceeds from cashing her pay checks. Petitioner submitted a Form W-2 reflecting 1993 wages paid by Drug Festival, Inc., to Jennifer in the gross amount of $6,330. After Federal, State, and payroll taxes were withheld, Jennifer's net wages amounted to $5,078. Subtracting $250, approximately the amount she kept for herself during the year, we find that Jennifer gave petitioner $4,828 in 1993.

Finally, petitioner testified that in January 1993, her friend Vilma Reye lent her $500 in order to help her pay her bills, and that in April 1993, petitioner repaid the $500 loan.

We find the testimony of petitioner and her daughter to be credible with respect to these items. We therefore find that petitioner has carried her burden of proving that the foregoing amounts were received from nontaxable sources and were erroneously included in respondent's determination, thereby overstating petitioner's unreported income by $8,199. We therefore sustain respondent's revised determination of unreported income only to the extent of $17,449.

B. Rental Expenses Reported on Schedule E

Respondent's determination added $6,166 to petitioner's rent income. The adjustment consisted of a $2,800 computational error relating to the way petitioner allocated her Schedule E expenses to the rental portion of the two-family residence. Petitioner has conceded the computational error portion of the adjustment.

The remaining portion of the adjustment is attributable to a $3,366 net disallowance of deductions for rental expenses claimed on petitioner's 1993 Schedule E.  Petitioner has failed to substantiate the rental expenses, specifically those relating to the payment of insurance, repairs, supplies, and gas, which respondent disallowed.

Petitioner argues that, in determining the amount of petitioner's cash expenditures for purposes of reconstructing her income, the parties stipulated that petitioner spent $5,893 on property improvements to the house, and that therefore petitioner is entitled to an additional depreciation deduction under section 168.

We do not agree with petitioner.  Respondent allowed petitioner a 1993 depreciation deduction for the house that is $618 greater than what she claimed on Schedule E.  Although the record does not disclose how this increase was computed in its entirety, we do have in evidence Ms. Dickerson's worksheet describing and itemizing the expenditures for the total improvements of $5,893.  It appears that Ms. Dickerson allocated these expenditures between the rental and personal use portions of the house and allowed an additional depreciation deduction for the portion of the year that petitioner owned the house. Petitioner has not shown that she is entitled to any additional depreciation deduction for the house.

Petitioner next argues that she is entitled to claim a deduction under section 163 of $1,250 for prepaid interest (points) that she paid in connection with the purchase of her house, and that she is entitled to amortize and deduct a portion of the remaining $1,250 payment of points as a rental expense on Schedule E. Respondent argues that petitioner is not entitled to claim any deductions for the $2,500 payment of points.

In order to deduct points paid in the connection with debt acquired for the purchase of a principal residence, petitioner must elect to itemize her deductions. Secs. 63(b), 163(h)(2) and (3). Petitioner claimed the standard deduction and did not itemize. Therefore, she is not entitled to deduct $1,250 of the points paid in connection with the debt acquired to purchase her principal residence.

Neither is petitioner entitled to deduct the full amount of the $1,250 of points paid in connection with her purchase of residential rental property. Section 461(g) provides that in the case of a cash basis taxpayer the prepayment of interest is not deductible in the year of payment, but must be capitalized and deducted ratably over the term of the loan to the extent that the interest paid represents the cost of using the borrowed funds during each tax year in the term. Petitioner has not presented any evidence as to the term of, or rate of interest on, the $125,000 mortgage loan.

Because petitioner has shown that she is entitled to a pro rata amortization deduction for her payment of points, but has not shown the amount of such deduction, we are permitted to estimate the amount under the rule of <u>Cohan v. Commissioner</u>, <u>supra</u>. The Court in <u>Cohan</u> directed the Board of Tax Appeals to estimate expenses "bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." We therefore conservatively estimate that the term of petitioner's mortgage loan is 30 years, and allow her a deduction for the amortization of her payment of points attributable to the rental portion of the house, in the amount of $32.[14] Respondent's adjustment to petitioner's rent income is sustained to the extent of $6,134, an amount equal to respondent's original adjustment of $6,166, less the $32 deduction allowed for the amortization of the payment of points.

C.    Gain Recognized on Sale of Truck

Section 1001 provides that gain from the sale of property equals the excess of the amount realized from the sale over the adjusted basis in the property sold. Generally, the adjusted basis of property equals its original cost, increased by expenditures properly chargeable to capital account, and

---

[14] The amount of the deduction is computed by dividing $1,250 by 30, then multiplying such product by 276/365 because petitioner purchased the home and acquired the related indebtedness on Mar. 30, 1993.

decreased by the greater of amounts allowed or allowable as depreciation deductions.  Secs. 1011, 1012, 1016(a)(1) and (2).

On July 18, 1991, petitioner purchased a Mack truck for $14,000, and paid an additional $500 for a warranty.  At some undisclosed time in 1993, petitioner sold the Mack truck for $12,000. Petitioner computed her depreciation deductions on the truck using a basis of $14,500, the original cost of the truck increased by the $500 warranty expenditure.  Petitioner applied the straight-line method of depreciation over a 5-year recovery period to the $14,500 basis in order to claim depreciation deductions of $1,450 and $2,900 for tax years 1991 and 1992, respectively.

Respondent argues that for the 1993 taxable year petitioner had gain of $2,350 on the sale of her truck.  Respondent calculated the gain by subtracting petitioner's adjusted basis, calculated to be $9,650 ($14,000 original cost - $4,350 of depreciation deductions), from the truck sale proceeds of $12,000.[15]

_____

[15] Petitioner claimed depreciation deductions using a $14,500 adjusted basis, rather than a $14,000 adjusted basis, which yielded petitioner larger depreciation deductions. However, in calculating her adjusted basis for purposes of determining gain on the disposition of the property, the full amounts of depreciation deductions previously claimed by petitioner decrease her basis in the truck, even though she was not entitled to deduct the full amounts.  See sec. 1016(a)(2); sec. 1.1016-3(a)(1), (b), Income Tax Regs.

Petitioner argues only that her adjusted basis in the truck should be increased by $500 to reflect petitioner's payment for the truck warranty. Petitioner argues that petitioner's $500 expenditure in 1991 resulted in the creation of an asset having a useful life beyond the end of the 1991 taxable year. We understand petitioner to argue that the warranty expenditure is therefore properly chargeable to capital account, thereby increasing petitioner's adjusted basis by $500, thereby reducing the gain on the sale of the truck from $2,350 to $1,850.

Although this Court has recognized that warranty expenditures that prolong the life or enhance the value of an asset are capital in nature, see Spritzer v. Commissioner, T.C. Memo. 1988-347 (citing Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 353 (1971) and Otis v. Commissioner, 73 T.C. 671, 674 (1980), affd. without published opinion 665 F.2d 1053 (9th Cir. 1981)), petitioner has neither entered a copy of the warranty into evidence nor testified as to the term and conditions of the warranty. Under these circumstances, petitioner has failed to prove that the warranty she purchased created an asset with a useful life that is properly chargeable to capital account. Accordingly, we reject petitioner's argument that her adjusted basis be increased by the $500 warranty

expenditure, and sustain respondent's determination that petitioner recognized gain of $2,350 on the sale of her truck.[16]

D.   Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20 percent of the portion of an underpayment of tax that is attributable to negligence or disregard of rules or regulations. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws.  Sec. 6662(c).  The regulations further define "negligence" to include failure by the taxpayer to exercise ordinary and reasonable care in the preparation of a tax return.  The penalty does not apply to any portion of an underpayment for which the taxpayer had reasonable cause and acted in good faith.  Sec. 6664(c).  In determining whether a taxpayer has acted with reasonable cause and in good faith, all pertinent facts and circumstances are taken into account.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The burden of proving that the accuracy-related penalty should not be imposed rests with the taxpayer.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

We find that petitioner did not make a reasonable attempt to comply with the provisions of the internal revenue laws, and that she did not act with reasonable cause and good faith.  Petitioner

---

[16] The entire $2,350 of recognized gain is subject to the recapture provision of sec. 1245 and is therefore treated as ordinary income.

failed to report a substantial amount of her income on her 1993 return, including income from her trucking business and income from the sale of her truck. Petitioner overstated her Schedule E losses by adjusting her rental expenses in an unacceptable manner, and failed to substantiate expenses that she deducted on her Schedule E.[17]

Petitioner's arguments against the imposition of the accuracy-related penalty relate only to the portion of the underpayment attributable to her unreported Schedule C income. Petitioner argues that she provided her tax preparer with receipts of her business expenses and with the Form 1099 received from Cappy's. She maintains that she was not negligent insofar as she maintained adequate books and records to substantiate all of her business expenses properly.

We need not address whether petitioner maintained adequate books and records for purposes of the accuracy-related penalty. In light of petitioner's failure to report substantial amounts of her income, grounds for sustaining respondent's determination that she is liable for the accuracy-related penalty exist independently of finding negligence based on the lack of maintaining adequate books and records. Accordingly, petitioner

---

[17] The accuracy-related penalty was also imposed on the portion of the underpayment attributed to the disallowance of the fuel tax credit under sec. 34 claimed by petitioner. Petitioner has conceded that she is not entitled to the sec. 34 credit.

is liable for the accuracy-related penalty under section 6662(a) on all portions of her underpayment of tax.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.