UNITED STATES of America, Appellee,

v.

Joseph ABODEELY, Appellant.

No. 85–2108.

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1986.
Decided Sept. 22, 1986.
Rehearing Denied Oct. 27, 1986.

See also, D.C., 564 F.Supp. 327.

Mark S. Pennington, Des Moines, Iowa, for appellant.

Richard L. Murphy, Asst. U.S. Atty., Sioux City, Iowa, for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and STROM, District Judge.*

HENLEY, Senior Circuit Judge.

Defendant Joseph Abodeely was indicted by the grand jury for two counts of criminal tax evasion in violation of 26 U.S.C. § 7201 for the tax years of 1978 and 1979. Following a jury trial in the United States District Court for the Northern District of Iowa,[1] the defendant was convicted on both counts and sentenced to two years imprisonment under Count II of the indictment, imposition of sentence was suspended on Count I, and defendant was placed on probation for three years commencing on his release from confinement. Defendant was also fined $10,000.00. Abodeely now appeals his convictions claiming that the district court erred in admitting over his objections evidence regarding Abodeely's involvement in promoting prostitution and his gambling activity in Las Vegas. This court has jurisdiction to hear the appeal. 28 U.S.C. § 1291. We affirm.

Joseph Abodeely derived his income from several business ventures. These included the Unique Motel, the Food Factory (a fast food restaurant), and the Meeting Place (a bar featuring exotic dancers and located

---

* The Honorable Lyle E. Strom, United States District Judge, District of Nebraska, sitting by designation.

1. The Honorable Donald E. O'Brien, United States District Judge, Northern District of Iowa, presiding.

near the Unique Motel). Abodeely filed an income tax return, along with his wife, for the 1978 tax year in which he stated their net taxable income was a negative $627.00. They declared a net taxable income for 1979 of $25,443.00. The government set out to prove that Abodeely's taxable income was substantially greater than the amount he stated in his tax returns for those two years. The government utilized the "bank deposits and cash expenditures" method to demonstrate that Abodeely received more income than he reported on his tax returns.

Evidence was introduced regarding various potential sources of the unreported income.[2] Among these potential sources were Abodeely's six trips to Las Vegas during 1978 and 1979. Abodeely had established credit with the MGM Grand Hotel and could receive markers from the cashier. A marker is an advance or loan which may be exchanged at the hotel's casino for chips in order to gamble. During each trip Abodeely received markers for between $12,000.00 and $16,000.00. Abodeely would then pay back these markers, in cash, on his subsequent trips. Abodeely's gambling activity was also rated by MGM. On his March, 1978 trip Abodeely was graded a B–30. The "B" indicated that Abodeely placed bets of $50.00 to $75.00 per bet. The "30" is time played in increments of fifteen minutes. Thus, "30" indicated he played seven and one-half hours. Mr. Abodeely's rating never fell below "B" for any of the six trips. This rating is used by the MGM to determine whether a player is to receive complimentary benefits. Room, food and beverage will be given if the player places a minimum of $7,500.00 in bets. Airfare will also be given if the amount of the bets exceeds $10,000.00. Abodeely received complimentary room, food, beverage and airfare on each occasion during 1978 and 1979. The records from

the MGM do not disclose whether Abodeely won, lost, or broke even while gambling.

In addition to the gambling evidence, the trial court also permitted the government to introduce evidence of Abodeely's involvement in promoting prostitution. Kim Golston testified that she worked for Abodeely for between four and six weeks in 1979. Golston would use a room at the Unique Motel and Abodeely would send men to her room. Golston would split the money that she received from the prostitution sixty/forty with Abodeely, Abodeely receiving sixty per cent. Another witness testified that she overheard Abodeely tell one of the dancers who worked for him that "if she couldn't hook for him she could move out of her apartment" at the Unique Motel.

Abodeely argues that the trial court erred in admitting this testimony because it was not relevant, Fed.R.Evid. 402, or, if relevant, its probative value was outweighed by the danger of unfair prejudice. Fed.R.Evid. 403.

The standard for review of the district court's evidentiary rulings challenged by the appellant is whether the court abused its discretion. *United States v. Poston*, 727 F.2d 734, 739 (8th Cir.), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984). The admissibility of evidence is primarily a determination to be made by the district court, *United States v. Jones*, 687 F.2d 1265, 1267 (8th Cir.1982), and this court will not substitute its judgment unless there has been an abuse of discretion. *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). Appellant contends that the evidence of the likely sources of income was not relevant to the government's proof of tax evasion under the bank deposits and cash expenditures method of proof.

---

**2.** The government argued that Abodeely had ten separate sources of unreported income: (1) money from room rentals at the Unique Motel that were not recorded; (2) prostitution income; (3) automobile sales; (4) Meeting Place—bar tabs, over the counter sales, and cover charges which were not rung up on the cash register; (5) rental of exotic dancers to V.F.W. post; (6) United Airline coupons; (7) assistance fees from Rapid Chevrolet for help in selling cars; (8) back door sales of televisions, radios and stereos; (9) Las Vegas gambling; and (10) rental income from other property.

In order to obtain a conviction for income tax evasion under 26 U.S.C. § 7201, the government must prove, beyond a reasonable doubt, the following elements:

(1) That there is a tax deficiency for the relevant year that is due and owing;

(2) That the defendant knowingly and wilfully failed to pay; and

(3) That the failure to pay was in an attempt to evade or defeat the tax due.

*United States v. Grasso,* 629 F.2d 805, 807 (2d Cir.1980); *United States v. Goichman,* 547 F.2d 778, 781 (3d Cir.1976). Abodeely's claims of error do not challenge the government's proof of the second and third elements. Defendant challenges the introduction of evidence as it relates to the first element—proof of a tax deficiency.

In order to prove a tax deficiency, " 'the government must show first that the taxpayer had unreported income, and second, that the income was taxable.' " *United States v. Fogg,* 652 F.2d 551, 555 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982) (quoting *United States v. Hiett,* 581 F.2d 1199, 1200 (5th Cir.1978)); *see United States v. Vannelli,* 595 F.2d 402, 405–06 (8th Cir. 1979) ("In a tax evasion prosecution it is necessary to show that an individual received more income than he reported. In order to do this, the government must establish potential sources from which this unreported income was derived."). Proof of unreported taxable income by direct means is extremely difficult and often impossible. By the very fact that a taxpayer has failed to report the income, it behooves him to obscure any trace of its existence. Therefore, direct methods of proof, which depend on the taxpayer's voluntary retention of records of the income, fail. Accordingly, the government has armed itself with an arsenal of indirect methods of proof which rely on circumstantial evidence to disclose unreported taxable income. These methods include:

(1) "Net worth," *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954);

(2) "Cash expenditures," *Taglianetti v. United States,* 398 F.2d 558 (1st Cir. 1968), *aff'd per curiam,* 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969); and

(3) "Bank deposits," *United States v. Esser,* 520 F.2d 213 (7th Cir.1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976).

■ The government may choose to proceed under any single theory of proof or a combination method, including a combination of circumstantial and direct proofs. H.G. Balter, *Tax Fraud and Evasion,* ¶ 13.03[3] (4th ed. 1976). The government denominates the method it used at trial in this case as the "bank deposits and cash expenditures" method. The "bank deposits" or "bank deposits and cash expenditures" method has been variously defined. The foundation of the method requires that the government "initially introduce evidence to show (1) that, during the tax years in question, the taxpayer was engaged in an income producing business or calling; (2) that he made regular deposits of funds into bank accounts; and (3) that an adequate and full investigation of those accounts was conducted in order to distinguish between income and non-income deposits." *United States v. Morse,* 491 F.2d 149, 152 (1st Cir.1974) (citations omitted); *see also Esser,* 520 F.2d at 217; *Gleckman v. United States,* 80 F.2d 394 (8th Cir. 1935), *cert. denied,* 297 U.S. 709, 56 S.Ct. 501, 80 L.Ed. 996 (1936). All non-taxable deposits are then excluded from the gross deposits and amounts on deposit from prior years are not included. *Morse,* 491 F.2d at 152. The figure arrived at after this "purification," *United States v. Boulet,* 577 F.2d 1165, 1167 (5th Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1017, 59 L.Ed.2d 72 (1979), is the net taxable bank deposits. Under a "pure" bank deposits approach, no further proof is necessary and "the jury is entitled to infer that the difference between the balance of deposited items and reported income constitutes unreported income." *Esser,* 520 F.2d at 217 (footnote omitted). The bank deposit method requires that the taxpayer's income be circulated through his bank accounts. If the

income is simply received or converted into cash exclusive of his bank accounts and subsequently spent, its existence is not reflected in the bank deposits analysis. Likewise, unless the unreported income is converted into durable or investment property (automobiles, real estate, etc.), it will not be discovered in a net worth analysis. *Taglianetti*, 398 F.2d at 562. Therefore, the bank deposits and cash expenditures method, an augmentation of the bank deposits method, is sometimes used by the government to prove the existence of unreported income.

 Under this augmented approach the underlying bank · deposits foundation must be laid to establish the initial taxable income. To this figure the government then adds any other income which the taxpayer received but did not deposit in any bank account. *Morse*, 491 F.2d at 152; *Morrison v. United States*, 270 F.2d 1, 2 (4th Cir.), *cert. denied*, 361 U.S. 894, 80 S.Ct. 196, 4 L.Ed.2d 150 (1959). This formulation of the approach would not immediately suggest the phrase "cash expenditure" as an appropriate adjunct to "bank deposits" in naming the method. The method could more aptly be described as bank deposits and non-deposits. The rationale for the naming of this method is, however, germane to the court's opinion. The basis for the cash expenditures language is found in such cases as *Boulet*, 577 F.2d at 1167, and *Percifield v. United States*, 241 F.2d 225 (9th Cir.1957). In both cases, the court states the bank deposit foundation and then continues that cash expenditures which would not be reflected in bank deposits are added thereto. *Boulet*, 577 F.2d at 1167; *Percifield*, 241 F.2d at 229 n. 7. Such language apparently led appellant to conclude that bank deposits and cash expenditures method is an amalgamation of the bank deposits, *see Esser*, 520 F.2d at 217, and cash expenditures, *see*

*Taglianetti*, 398 F.2d at 562, methods. The cash expenditures method, however, is a simple variant of the net worth method and requires the government to establish a beginning and ending net worth position of the taxpayer. *Taglianetti*, 398 F.2d at 562; *United States v. Newman*, 468 F.2d 791, 793 (5th Cir.1972), *cert. denied*, 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973). No showing of opening or closing net worth is necessary under the bank deposits and cash expenditures method. *Boulet*, 577 F.2d at 1167 n. 3; *Percifield*, 241 F.2d at 230. A careful reading of *Boulet* and *Percifield* reveals that the government there did not merely prove a cash expenditure; it also demonstrated a source of the income from which the expenditures were made. In all the cases the government presented proof of the source of the undeposited income. *Morse*, 491 F.2d at 153 ("customer checks which had been cashed or endorsed over to third parties"); *Boulet*, 577 F.2d at 1167 ("cash the doctor received from fees"); *Percifield*, 241 F.2d at 229 (unreported income from gambling); *Vannelli*, 595 F.2d at 405–06 (embezzled bingo proceeds). Thus, the cash expenditures identified in *Boulet* and *Percifield* are not an end in themselves, but, rather, an indication that an unreported income source exists to be found. An indication alone, however, is not enough to convict someone of tax evasion because the money for the expenditure may have come from a taxable source or a non-taxable source. Under any method the government must demonstrate, beyond a reasonable doubt, that the unreported income came from a taxable source. There are two different ways that the government can show the taxable nature of the income.[3]

 First, the government may choose to negative all possible sources of non-taxable income. If this is done, there is no necessity of proving a likely source of the

---

**3.** The court has dwelled on the matter of nomenclature to demonstrate that the government's method of proof here is not simply an amalgamation of the bank deposits and cash expenditures methods, but more nearly resembles a combination of the bank deposits and

specific item, *United States v. Horton*, 526 F.2d 884, 886 (5th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976), methods, although it lacks some of the specific item method's precision.

income. *United States v. Massei,* 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958) (per curiam). Under the bank deposits approach this would require the government to "do everything that is reasonable and fair [in] the circumstance to identify any non-income transactions and deduct them from total deposits." *Esser,* 520 F.2d at 217. The same is true in a bank deposits and cash expenditures case. *Morse,* 491 F.2d at 152. The second approach is to prove a likely source from which the jury could reasonably find that the income sprung. *Holland,* 348 U.S. at 138, 75 S.Ct. at 136–37; *Vannelli,* 595 F.2d at 406. Proof of a likely source of the income necessarily negatives possible non-taxable sources. *Holland,* 348 U.S. at 137–38, 75 S.Ct. at 136–37. Appellant argues that *Holland* is a net worth case and has no bearing on a bank deposits and cash expenditures case.

■ This court does not completely agree. Under any § 7201 tax evasion case the government must show unreported taxable income as an element of its proof. Further, the net worth and bank deposits and cash expenditures methods both rely on circumstantial evidence, and the various safeguards expressed in *Holland* regarding the use of circumstantial evidence apply equally. *United States v. Wiese,* 750 F.2d 674, 678 (8th Cir.1984); *United States v. Hall,* 650 F.2d 994, 997 (9th Cir.1981). Therefore, under any circumstantial method of proof, it is incumbent on the government to prove that the excess income is taxable.

■ Gains from unlawful activity are taxable, *James v. United States,* 366 U.S. 213, 218–20, 81 S.Ct. 1052, 1055–56, 6 L.Ed.2d 246 (1961); *United States v. Eliano,* 522 F.2d 201, 202 (2d Cir.1975); as are gains from gambling, *McClanahan v. United States,* 292 F.2d 630, 631–32 (5th Cir.), *cert. denied,* 368 U.S. 913, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961). Here, gambling and prostitution evidence is relevant because it has the tendency to make it more probable that Abodeely had unreported income from a taxable source. Fed.R.Evid. 401. "All relevant evidence is admissible" unless otherwise excluded. Fed.R.Evid. 402. The prostitution evidence was plainly relevant because the testimony of Golston clearly reveals that Abodeely was receiving taxable income. The testimony concerning a requirement that a dancer "hook" or "move" tended to show that appellant was in the prostitution business for profit.

■ This court is somewhat troubled by the gambling evidence, but does conclude that it was marginally relevant. The evidence reveals that Abodeely made six trips to Las Vegas during the tax years in question and made wagers in excess of $10,-000.00 on each trip. From this evidence three conclusions may be drawn. First, the conclusion urged by the government, that Abodeely won at gambling and received income. Second, Abodeely may have lost. Losing, however, would also indicate unreported income because the losses would have to be covered. Abodeely always repaid his markers in cash on the subsequent trip. If he was losing money, this indicates a substantial unreported income source necessary to satisfy the losses. The third possibility is that Abodeely broke even; this would indicate no income from gambling and also might not evidence any other income source. Abodeely argues that he simply took the markers to use the cash as an interest free loan for cash flow at his various businesses. This explanation is plainly at odds with MGM's rating of Abodeely and the complimentary airfare which he was extended. The various inferences that may be drawn, but which a jury was not required to draw, from this evidence weigh in favor of evidencing an income source.

Apart from relevance Abodeely urges that the probative value of the questioned evidence is outweighed by the danger of unfair prejudice.

■ Evidence of this nature is undoubtedly prejudicial to the defendant. The rule requires, however, that the probative value be substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. A

district court's determination respecting the admissibility of evidence under Rule 403 is given great deference, *United States v. Michaels,* 726 F.2d 1307, 1315 (8th Cir.), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984), and, as indicated, will not be reversed "absent a clear and prejudicial abuse of discretion." *Wade v. Haynes,* 663 F.2d 778, 783 (8th Cir.1981), *aff'd sub nom., Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Numerous cases have upheld the admission of highly prejudicial evidence that was inextricably tied to proving the taxable nature of the income. *United States v. Tafoya,* 757 F.2d 1522, 1526–27 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 252, 88 L.Ed.2d 259 (1985) (payment for assassination attempts); *United States v. Ochs,* 595 F.2d 1247, 1260–61 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979) (income derived from extortion, loansharking and prostitution); *United States v. Carrillo,* 561 F.2d 1125, 1127 (5th Cir. 1977) (unsavory business dealings that may have been the basis of state criminal prosecution).

 The court has no conceptual difficulty with the evidence concerning prostitution. While it is certainly prejudicial, it is highly probative of unreported taxable income. The gambling evidence, while having less direct probative value, is much less prejudicial, and indeed if its admission was error (which this court does not conclude), the error was harmless beyond a reasonable doubt. After all, having been shown that Abodeely ran a bar and a brothel, even the most straitlaced Iowa jury could hardly have been adversely affected by a showing of his participation in the legal, though perhaps sinful and worldly in the eyes of a midwestern jury, activity of gambling in Nevada.

We note that the district court closely scrutinized the challenged evidence in a series of conferences held out of the presence of the jury. That court endeavored to ensure that Abodeely would not be convicted on evidence of other crimes, but only on evidence of tax violations by giving several curative and limiting instructions during the challenged testimony. In sum, the trial was fair and free from abuse of discretion in receipt of evidence.

Abodeely's conviction is affirmed.