**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2015-54

UNITED STATES TAX COURT

DAVID WILLIAM LAUDON, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27380-11S. Filed September 8, 2015.

David William Laudon, pro se.

<u>Christina L. Cook</u> and <u>John Schmittdiel</u>, for respondent.

SUMMARY OPINION

HOLMES, <u>Judge</u>:  David Laudon is a chiropractor licensed in Minnesota.
He made nearly $290,000 in bank deposits from 2007 to 2009 yet reported only a
bit less than $210,000 in gross receipts on his returns.  He deducted as business
expenses for his chiropractic home office a Microsoft Xbox 360, Nintendo Wii,
and numerous pieces of hair-salon equipment.  He also claimed deductions for

driving tens of thousands of miles throughout Minnesota and the Dakotas--both to treat patients and to perform an assortment of other services. The Commissioner thought this was a stretch and urges us to support his adjustments.[1]

Background

Laudon owns and operates a rather unconventional chiropractic business in Detroit Lakes, Minnesota. He treats some of his patients in his home and claims to use roughly half of his house--the basement and half of the garage--for business. Like many chiropractic offices, Laudon's has beds, tables, and a waiting area. But unlike most, his also comes equipped with a Wii, Xbox 360, big-screen TVs and, for a time, a working hair salon.

Laudon testified that he also makes "house calls" and reported that he racked up between 40,000 and 60,000 miles per year in his business vehicles. He said that his patients often called him a psychiatrist, chauffeur, physician, peace officer, or even a pheasant hunter.[2] Some of Laudon's stated reasons for making

---

[1] We tried this small case in St. Paul under Internal Revenue Code section 7463(f). (All section citations are to the Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.) Trial as a small case means that this decision isn't reviewable by any other court, and this opinion shouldn't be cited as precedent.

[2] But not a ghostbuster. The Commissioner rhetorically asserted that some of Laudon's trips might have made more sense if he was claiming to be a

(continued...)

these trips strain credibility: for example, driving to a "schizophrenic" patient who was--on more than one occasion--"running scared of demons" down a rural Minnesota highway, or driving to a patient's home in a Minneapolis suburb--expensing 261 miles--because he had received a call from police that she had overdosed on OxyContin prescribed by her *physician*. Laudon claimed to have driven hundreds of miles per day--sometimes without a valid license--to see patients, but several of these trips were for medical procedures he was not licensed to perform. Even his testimony about multiple entries in the logs where he wrote "DUI" was not credible: He claimed that these were not references to being stopped by police while under the influence, or driving while his license was suspended, but instead were his misspellings of a patient named "Dewey"--a supposed patient of his. He testified that he took one business trip to pick up a patient left stranded due to a domestic dispute with his girlfriend. And he even testified about trips he made to test his patients' urine:

---

[2](...continued)
ghostbuster. Laudon then disclaimed any employment as a ghostbuster. In his reply brief the Commissioner conceded that Laudon was not "employed or under contract to perform work as a ghostbuster during the tax years at issue in this case." We therefore need make no finding on the existence of a market for "supernatural elimination" in west-central Minnesota. See "Ghostbusters" (Columbia Pictures 1984).

Absolutely we do * * * [test urine]. It's part of the--I believe it's Federal, you know, that they have--we have to abide by that. It's specific gravity. You're basically, looking for sugar, let alone height, weight, blood pressure. Make sure they're not drunk, doing illegal drugs.

We find Laudon not credible in his testimony regarding his business mileage, and this finding affects our views of his testimony's credibility on every other issue in the case.

These other issues arise from his unusual returns that reported no net income:[3]

| Year | Gross Receipts | Expenses | Taxable Income |
|------|----------------|----------|----------------|
| 2007 | $59,056 | $111,250 | $(60,944) |
| 2008 | 67,068 | 71,005 | (65,081) |
| 2009 | 33,952 | 56,313 | (84,393) |

Laudon did, however, make unexplained deposits into his bank accounts. The Commissioner analyzed these accounts and discovered that Laudon had put nearly $80,000 more into them than he'd reported on his tax returns. The Commissioner

---

[3] The gross receipts and expenses come from Laudon's Schedules C, which constitute the biggest part of his returns. He combined his Schedule C losses with other items--Schedule A itemized deductions or the standard deduction depending on the year, his personal exemption, and large "other income" items that were carried-forward losses--to arrive at his taxable income.

added this amount to Laudon's income and disallowed many deductions. The notice of deficiency determined:

| Year | Gross Receipts | Expenses | Taxable Income |
| --- | --- | --- | --- |
| 2007 | $71,056 | $11,319 | $46,766 |
| 2008 | 105,997 | 28,780 | 62,812 |
| 2009 | 62,014 | 23,290 | 26,138 |

Laudon filed a timely petition, and we tried his case in St. Paul. Laudon remains a Minnesota resident, as he was when he began his case.

Discussion

A.    Income

We first ask whether Laudon underreported his income. Laudon did not keep records of his income in any decipherable form; and when this happens the Commissioner may reconstruct a taxpayer's income by using any rational method that separates taxable income from nontaxable income and expenses. A bank-deposits analysis is an acceptable method. See, e.g., Caulfield v. Commissioner, 33 F.3d 991, 993 (8th Cir. 1994), aff'g T.C. Memo. 1993-423.

For us to accept his bank-deposits analysis, the Commissioner must show that Laudon operated an income-producing business for the tax years at issue, and made regular deposits into this business's bank accounts. He may then compute

net taxable income by distinguishing taxable deposits from deposits of nontaxable income and income from years not at issue. See United States v. Abodeely, 801 F.2d 1020, 1023 (8th Cir. 1986). Using this long-accepted method, the Commissioner determined that Laudon had made net taxable deposits for the tax years before us:[4]

| Year | Total Deposits | Reported and non-taxable income | Total unreported taxable income |
|---|---|---|---|
| 2007 | $99,578 | $87,578 | $12,000 |
| 2008 | 113,448 | 74,519 | 38,929 |
| 2009 | 74,862 | 46,800 | 28,062 |
| Total | 287,888 | 208,897 | 78,991 |

Because the Commissioner used an acceptable method of income reconstruction, Laudon has the burden of proving that the Commissioner made some mistake. See Caulfield, 33 F.3d at 993; Dodge v. Commissioner, 981 F.2d 350, 354 (8th Cir. 1992), aff'g 96 T.C. 172 (1991). Laudon contends that the Commissioner failed to classify certain deposits as nontaxable, including insurance payments for damage to several vehicles, one of which was involved in a "high speed police chase" with a man "high on meth and cocaine." He also

_____

[4] The Commissioner did concede that one $900 deposit shouldn't be included in the bank-deposits analysis due to a bank error.

claims he had proceeds from car sales gone awry, the sale of scuba equipment, compensation for lost luggage, and payments from Best Buy and FedEx for damage to his laptop computer on two different occasions. And he claims that "Wells Fargo lost [a] cash deposit" of $6,000 or maybe $7,850.

But because he didn't produce *any* evidence verifying that these amounts were deposited into the relevant accounts, Laudon hasn't met his burden of proof. Cf. Caulfield, 33 F.3d at 993-94. The Commissioner calculated Laudon's income by adding the deposits in his personal accounts and business account for each of the years at issue. He then reduced the total by Laudon's reported income and by any deposits identified as nontaxable. We therefore accept the Commissioner's reconstruction of Laudon's income.

B.    Deductions

We next look at Laudon's deductions. The Commissioner allowed very few of them:

| Schedule C expenses | | | |
|---|---|---|---|
| Year | Amount reported on return | Amount allowed by exam | Adjustment |
| 2007 | $111,250 | $11,319 | $99,931 |
| 2008 | 71,005 | 28,780 | 42,225 |
| 2009 | 56,313 | 23,290 | 33,023 |

| Total | 238,568 | 63,389 | 175,179 |
|---|---|---|---|

The Commissioner's reason was simple: Like any taxpayer, Laudon can claim business-expense deductions only for the ordinary and necessary expenses of his business, <u>see</u> sec. 162(a), and he bears the burden of proof, <u>see</u> Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). Taxpayers usually meet this burden with records of some kind. <u>See</u> sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975); sec. 1.6001-1(a)-(e), Income Tax Regs. And for some kinds of expenses, those records must be particularly detailed. <u>See</u> sec. 274(d).

**Car and Truck Expenses**

We look first at the very large deductions that Laudon claimed for his travel throughout and between the Dakotas and Minnesota. The Commissioner objected to all of these on the ground that Laudon's records didn't substantiate them:

| Car and truck expenses | | | |
|---|---|---|---|
| <u>Year</u> | <u>Amount reported on return</u> | <u>Amount allowed by exam</u> | <u>Adjustment</u> |
| 2007 | $30,645 | $0 | $30,645 |
| 2008 | 24,899 | 0 | 24,899 |
| 2009 | 23,741 | 0 | 23,741 |

Laudon's problem is that car-and-truck expenses are governed by section 274(d), which requires his records to show (1) the amount of each expense, (2) the dates that he drove for business purposes, (3) where he was going, and (4) his business reason for going there. See sec. 274(d).

Laudon had a mileage log, but it fails to meet section 274(d)'s standards. The July 31, 2007 entry, for example, describes his purpose as "[t]ravel to and from places." Even Laudon conceded that his log was "not a complete itemized thing." We find this log to be both incomplete and incomprehensible and disallow Laudon's mileage deductions in full.

**Home Office Expenses**

Laudon also took deductions for using his basement and garage as a home office in 2007 and 2009:

| Business use of home expense | | | |
|---|---|---|---|
| Year | Amount reported on return | Amount allowed by exam | Adjustment |
| 2007 | $5,235 | $0 | $5,235 |
| 2009 | $1,787 | $0 | $1,787 |

Section 280A(c)(1) allows a taxpayer to claim a deduction for the portion of his home allocated for business use. A taxpayer claiming a deduction under this section must, however, show that he used the portion of his home *exclusively* for

business.  Id.; Langer v. Commissioner, 980 F.2d 1198, 1199 (8th Cir. 1992), aff'g T.C. Memo. 1990-268.

While we accept that Laudon treated patients in his home at least some of the time, we don't find credible his testimony that his basement was used exclusively for his business.  We particularly disbelieve his claim that the Xbox, Wii, big-screen TVs, and other electronics in his basement were used exclusively for chiropractic purposes since this claim conflicts with his much more plausible admission to the IRS examiner during audit that his daughter and his girlfriend's son would play these video games while he was on the phone.[5]  Laudon also admitted that he used his garage to store the cars that he used personally.  This is an entirely plausible use of a garage, but it means we won't find that he used the garage exclusively for business purposes.  We also deny these deductions because

---

[5] Laudon further undermined his credibility by claiming that he used the Wii and Xbox 360 to keep his patients "active and moving."  These are well-known games whose features are not subject to reasonable dispute and are "generally known within the trial court's territorial jurisdiction."  Fed. R. Evid. 201(b)(1).  One can imagine the Wii--with games such as Wii Bowling and Wii Fit that feature motion-based controllers requiring physical activity from its users--might be used for its physical benefits.  But no reasonable person could think that the Xbox 360 could be--Microsoft didn't introduce the Kinect until late 2010, just in time for Christmas and before the years at issue in this case.  Before Kinect, Xbox playing was more of the vegging-out-on-the-couch variety.

Laudon failed to substantiate his claimed home-office expenses with any records or other documentation.

### Insurance, Repairs, Utilities, Office Expenses, and Wages Expenses

We'll dispose of some other contested deductions on Laudon's returns:

| Insurance, repairs, utilities, office expenses, and wages | | | | |
|---|---|---|---|---|
| Year | Expense category | Amount reported on return | Amount allowed by exam | Adjustment |
| 2007 | Insurance | $2,030 | $850 | $1,180 |
| | Repairs | 5,405 | 0 | 5,405 |
| | Utilities | 6,160 | 3,490 | 2,670 |
| | Office expenses | 13,169 | 1,553 | 11,616 |
| 2008 | Insurance | 3,717 | 850 | 2,867 |
| | Utilities | 7,749 | 4,339 | 3,410 |
| | Wage | 9,600 | 0 | 9,600 |
| 2009 | Insurance | 3,012 | 0 | 5,083* |
| Total | | 50,842 | 11,082 | 41,831* |

\* The notice of deficiency disallowed insurance expenses of this amount even though Laudon had claimed a smaller amount. We suspect that the Commissioner meant to disallow the $5,083 that Laudon claimed on his 2009 return as "Repairs and Maintenance." But this is just speculation, and neither party offered any evidence on the subject. We therefore treat the disallowance of $5,083 as a disallowance of the actual amount that Laudon claimed--$3,012. This reduces the total adjustments for these expenses, and the parties should redo the Commissioner's math and use this lower amount in their Rule 155 computations.

Laudon produced no substantiation whatsoever that would let us allow anything beyond what the Commissioner already has.

**Other Expenses**

| Other expenses | | | |
|---|---|---|---|
| Year | Amount reported on return | Amount allowed by exam | Adjustment |
| 2007 | $33,728 | $2,741 | $30,987 |
| 2008 | 3,299 | 1,850 | 1,449 |
| 2009 | 1,534 | 1,284 | 250 |

The Commissioner disallowed $30,987 of Laudon's claimed "other expenses" in 2007. Laudon didn't substantiate any of his claimed deductions for these "other expenses" for 2007, 2008, and 2009, so we agree with the Commissioner's determination. Most of this amount--$22,665--was a deduction for the value of Laudon's labor, supplies, and stolen tools related to the renovation of a home that Laudon neither lived nor worked in, or even owned. We agree with the Commissioner that these improvements aren't related to Laudon's chiropractic business. They do seem to have produced some money for Laudon, though: He filed a mechanic's lien for expenses including a "Jacuzzi tub," "Race Tracks," several hotel-room bills, a satellite dish, and several necessities for a "[b]asement movie room," and received $20,000 as a result. The Commissioner classified this

$20,000 as nontaxable income, and we have no reason to disturb this determination either.

**Depreciation**

| Depreciation | | | |
|---|---|---|---|
| Year | Amount reported on return | Amount allowed by exam | Adjustment |
| 2007 | $5,172 | $0 | $5,172 |
| 2009 | 3,234 | 0 | 3,234 |

We turn next to depreciation. On this item, the Commissioner seems to have made a mistake that benefits Laudon. For his 2007 tax year, Laudon claimed a $5,172 depreciation expense; and for 2008, a $12,193 depreciation expense. But the Commissioner in the notice of deficiency disallowed $12,193 in depreciation for 2007 and didn't disallow anything for 2008. For 2009 he disallowed $28,062, but Laudon had claimed only $3,234. This suggests a clerical error, but the Commissioner never asked to fix it. As a result, the Commissioner does not dispute Laudon's claimed $12,193 depreciation for 2008. And for 2007 and 2009, the Commissioner's adjustments were larger than the amounts that Laudon claimed. Laudon didn't present any evidence--either records or testimony-- substantiating his claimed depreciation in any amount, so we sustain their disallowance. But only up to the amounts that he claimed. (As with the 2009

"insurance" expense, the parties should take this into account when they do the Rule 155 computations.)

**Net Operating Losses**

| Net Operating Losses | | | |
|---|---|---|---|
| Year | Amount reported on return | Amount allowed by exam | Adjustment |
| 2008 | $52,194 | $0 | $52,194 |
| 2009 | 52,182 | 0 | 52,182 |

Laudon claimed net operating losses of $52,194 for 2008 and $52,182 for 2009, but the Commissioner disallowed them entirely. Laudon has the burden of proof. See Keith v. Commissioner, 115 T.C. 605, 621 (2000). He did not, however, ever address this issue at trial. We therefore find for the Commissioner and sustain his disallowance.

C.   Penalty

The last issue is whether to sustain the Commissioner's application of an accuracy-related penalty under section 6662 for Laudon's underreported income and overstated deductions. A taxpayer is subject to a substantial-understatement penalty if he understates his income tax by the greater of $5,000 or ten percent of the tax required to be shown for the taxable year. See sec. 6662(a), (d)(1)(A).

Laudon's understated income tax meets this requirement for all three tax years at issue.

Laudon asserts the defense that he reasonably relied on the advice of a tax professional. See sec. 1.6664-4(b), Income Tax Regs. To make this determination, we look to three factors. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

- First, was the adviser a competent professional who had sufficient expertise to justify reliance?

- Second, did the taxpayer provide necessary and accurate information to the adviser?

- Third, did the taxpayer actually rely in good faith on the adviser's judgment?

We don't need to address the first and third factors because we don't believe that Laudon provided "necessary and accurate information" to his adviser. See id. At trial Laudon presented the summaries of his tax information and expenses that he provided to H&R Block's preparers. He said he also provided his preparers with "all my receipts and stuff," but he didn't present evidence suggesting he provided all of his receipts or that what he provided was sufficiently detailed to aid his preparers. For example, included in the exhibit alongside these summaries was Laudon's mileage log, but he later admitted his mileage log wasn't a complete

itemized list; and so if this is something he presented his preparers, it wouldn't be sufficient. Moreover, while he claimed to have brought all of his receipts to H&R Block along with his summaries, he later stated that his preparers didn't want him to just walk in with his receipts and have them add it up, so it's unclear to what extent he actually went over his receipts with his preparers rather than just presenting the summaries. And Laudon never mentioned explaining the diverse and unconventional nature of his business so as to help his preparers understand his (incomplete) logs and claimed expenses. All of this leads us to find that Laudon did not provide all of the necessary and accurate information to his advisers. Having blinded H&R Block to the details and peculiarities of his chiropractic enterprise, Laudon cannot now claim that he relied on H&R Block's advice. We sustain the penalty.

Decision will be entered

under Rule 155.