# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4455

_____

United States of America

*Plaintiff - Appellee*

v.

Robert S. Beyer, II

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2017
Filed: December 21, 2017

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury found Robert S. Beyer, II guilty of wire fraud in violation of 18 U.S.C. § 1343 and unlawful monetary transaction in violation of 18 U.S.C. § 1957. The district court[1] sentenced him to 97 months' imprisonment. He appeals the conviction and sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

## I.

Beyer sold insurance and securities for several companies. In 2011, he formed Heroic Life Assurance Company. He described HLA as a start-up life insurance company. Beyer asked at least four of his pre-HLA clients to invest with HLA. He assured them that their money would be kept safe, promising two of them a guaranteed rate of return.

The investors gave HLA over $330,000. Beyer spent much of their money for his personal benefit. Beyer repaid one investor, using another investor's funds. He did not return any funds to any others.

A jury found Beyer guilty. At sentencing, the district court applied a vulnerable-victim enhancement. It also denied a downward departure in criminal history.

## II.

Beyer stressed he used some investor funds for legitimate business expenses. The government countered with evidence that Beyer spent about $109,000 of investor funds on non-business expenses, including retail purchases, meals and incidentals, child support, gas, and dating services. Beyer did not pay these expenses in cash.

Beyer withdrew about $30,000 in cash from the investor funds. The government introduced evidence he spent at least some of the cash withdrawals for non-business expenses, including withdrawing about $300 in cash at an ATM in an adult-entertainment club. This "ATM-location evidence" discussion takes 18 lines of a three-volume transcript, and it was not mentioned again.

Beyer objected to the ATM-location evidence. The district court admitted it without limitation. Beyer appeals. This court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Never Misses A Shot*, 781 F.3d 1017, 1027 (8th Cir. 2015).

In his objection, Beyer paraphrased Rule 403: a district court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." **Fed. R. Evid. 403** advisory committee's note; *see also* **United States v. Fletcher**, 322 F.3d 508, 518 (8th Cir. 2003) ("Rule 403 is concerned only with *unfair* prejudice, that is, an undue tendency to suggest decision on an improper basis.") (internal quotation marks and attribution omitted).

Admitting the ATM-location evidence, the district court said: "[Defense counsel], as you're aware, it's a rule of inclusion instead of exclusion. So I'm going to overrule your objection." The government believes the district court was applying Rule 403. *See* **United States v. Dennis**, 625 F.2d 782, 797 (8th Cir. 1980) ("In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission."). Beyer believes the district court was referencing Rule 404(b). *See, e.g.*, **United States v. Armstrong**, 782 F.3d 1028, 1034 (8th Cir. 2015) (stating "Rule 404(b) is a rule of inclusion rather than exclusion"), *quoting* **United States v. Turner**, 583 F.3d 1062, 1065 (8th Cir. 2009).

Regardless of Beyer's belief, he focuses on Rule 403, which controls this issue. "[B]oth Rule 404(b) evidence and evidence beyond the rule's scope are subject to the dictates of Rule 403, which requires that the probative value of evidence is not substantially outweighed by the danger of unfair prejudice." **United States v. Adams**, 401 F.3d 886, 899 (8th Cir. 2005). According to Beyer, the ATM-location evidence

"introduced a spurious and prejudicial lure quite capable of distracting jurors from resolving the hotly contested question of whether he acted with an intent to defraud."

This court rejected a similar argument in *United States v. Abodeely*, 801 F.2d 1020 (8th Cir. 1986). There, the government alleged the defendant under-reported taxable income. *Id.* at 1022. The government presented evidence of potential sources of unreported income, including prostitution. *Id.* This court acknowledged that the evidence was "certainly prejudicial." *Id.* at 1026. But this court approved its admission because the evidence was "highly probative of unreported taxable income." *Id.*

The *Abodeely* evidence—income from illegal acts—is more prejudicial than the ATM-location evidence. Like the *Abodeely* evidence, the ATM-location evidence was highly probative of a necessary element, the intent to defraud. *See* **18 U.S.C. § 1343**. The location of Beyer's withdrawals—an adult club—was proof he might not have used investor funds for legitimate business expenses. The district court did not abuse its discretion in admitting the ATM-location evidence. *See* **Abodeely**, 801 F.2d at 1026; *see also* **United States v. Shrum**, 655 F.3d 782, 786 (8th Cir. 2011) (affirming the admission of evidence that the defendant spent business income on gambling, despite his argument that the evidence "inflame[d] moral prejudice.").

## III.

The Presentence Investigation Report did not recommend a vulnerable-victim enhancement. *See* **USSG § 3A1.1(b)(1)** ("If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by **2** levels."). The government objected. At sentencing, the government presented testimony from two victims, R.R. and Mi.F. R.R. is permanently disabled from a train derailment in 1994. From a settlement, he had about $250,000 left, the bulk of his savings. R.R.'s only source of income is a $2,500 monthly disability pension. He testified he gave

Beyer "a complete picture" of his financial situation. He said he did not "keep up on" investment "stuff," but trusted Beyer. At trial, an FBI agent testified Beyer admitted that R.R. "was not a savvy investor" and "did not understand the risks involved in providing money to Mr. Beyer for a start-up, such as HLA."

Mi.F. testified that when he invested with HLA, he was an alcoholic. For several years, he drank a quart of whiskey a day. His wife testified at trial that Mi.F. was drunk when Beyer solicited his investment. Mi.F. explained that his military service has led to health and psychological issues. He testified that because of these issues, he invested "to make sure my wife's well taken care of." Mi.F. said that he had told Beyer about his alcoholism and health issues.

The district court applied the two-level vulnerable-victim enhancement. This court reviews this factual issue for clear error. *United States v. Beckman*, 787 F.3d 466, 495 (8th Cir. 2015). "Under clear error review, we may reverse only if we have a definite and firm conviction that the District Court was mistaken." *United States v. Boyd*, 792 F.3d 916, 919 (8th Cir. 2015), *quoting United States v. Willis*, 433 F.3d 634, 636 (8th Cir. 2006).

A "vulnerable victim" is "a person . . . who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." **USSG § 3A1.1** cmt. n.2. The enhancement "applies as long as one or more victims was vulnerable." *United States v. Pierre*, 870 F.3d 845, 849 (8th Cir. 2017).

A.

Beyer makes two preliminary points. First, he argues that section 3A1.1 requires that a victim's vulnerability contribute to the success of the defendant's scheme. This court has rejected this argument. *See United States v. Callaway*, 762

F.3d 754, 760 (8th Cir. 2014) ("Callaway argues that the vulnerable victim enhancement is inappropriate in his case because the government failed to prove that a 'nexus' existed between Bryant's vulnerability and his crime's success. . . . The Sentencing Commission has eliminated the nexus requirement, however, by amending § 3A1.1 and striking a note requiring that the defendant have targeted his victim because of her vulnerability."); *United States v. Donnelly*, 370 F.3d 87, 92-93 (1st Cir. 2004). *But see United States v. Adeolu*, 836 F.3d 330, 333 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 838 (2017).

Second, Beyer says that the district court should have made "particularized findings detailing" how R.R. was "unusually vulnerable." He invokes *United States v. Anderson*, 349 F.3d 568, 572 (8th Cir. 2003) (*Anderson I*): the vulnerable-victim enhancement "requires a fact-based explanation of why advanced age or some other characteristic made one or more victims 'unusually vulnerable' to the offense conduct, and why the defendant knew or should have known of this unusual vulnerability."

In *Anderson I*, the district court said only: "Having presided over the trial in this case and heard the evidence, I hereby make the factual findings implicit in my decision to overrule [the defendant's] objections [to the vulnerable-victim enhancement]." *Id.* at 571. On appeal, the government's brief "provide[d] no detailed analysis of why [the trial testimony of multiple victims] established that [the defendant] knew or should have known that *any* victim was unusually vulnerable to this investment fraud due to age or any other factor." *Id.* at 573. This court remanded for resentencing because the record was insufficient: "On this record, the district court's statement that, having heard the trial evidence, 'I hereby make the factual findings implicit in my decision,' does not give us an adequate basis to review the court's application of § 3A1.1(b)(1)." *Id.*

Contrary to Beyer's argument, the key to *Anderson I* is the adequacy of the record. *See* **United States v. Vega-Iturrino**, 565 F.3d 430, 433-34 (8th Cir. 2009) (interpreting *Anderson I*). Here, although the district court did not make explicit factual findings, R.R. and Mi.F. testified at sentencing. The district court heard arguments whether that testimony warranted the enhancement. The appellate briefs analyze the record. Unlike *Anderson I*, this court has an adequate record to review the enhancement.

B.

According to Beyer, "the fact [that] victims are alcoholic or physically disabled does not render any crime they suffer" a crime against a vulnerable victim. Beyer ignores the combination of factors he knew about R.R. and Mi.F.: (1) R.R.'s disability, limited income and assets, and lack of investment sophistication; and (2) Mi.F.'s health issues and alcoholism. R.R. and Mi.F. were thus "particularly susceptible" to financial fraud. *See* **United States v. Rumsavich**, 313 F.3d 407, 413-14 (7th Cir. 2002) (the defendant's "victims were vulnerable because they had a lower than average ability to protect themselves against his fraudulent investment programs, due to a combination of their age, severe physical or emotional difficulties, widowhood, pronounced need for sound and truthful investment advice, limited incomes, and frequently combined with a demonstrated lack of knowledge and understanding of financial ventures.") (internal citation and quotation marks omitted); **United States v. Anderson**, 440 F.3d 1013, 1018 (8th Cir. 2006) (upholding a vulnerable-victim enhancement for a crime against an 84-year-old with an eighth-grade education, no work experience that "demonstrate[d] an exposure to or an understanding of investments," and "no investment experience outside of her connection with the defendant").

This court does not have a definite and firm conviction that the district court mistakenly applied the vulnerable-victim enhancement.

IV.

Beyer received probation for driving while intoxicated in 2012. The district court found that Beyer committed the charged offenses while on probation, adding two points to the criminal history. *See* **USSG § 4A1.1(d)** ("Add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."). Beyer thus moved from criminal history category I to category II. *See* **USSG Ch. 5, Pt. A**.

Beyer sought a downward departure in criminal history. *See* **USSG § 4A1.3(b)(1)** (authorizing a downward departure if the criminal history calculation "substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes"). The district court denied the motion. This court has "jurisdiction to review a district court's decision not to depart only where the decision is based on the district court's legally erroneous determination that it lacked authority to consider a particular mitigating factor." ***United States v. Patten***, 397 F.3d 1100, 1105 (8th Cir. 2005), *quoting **United States v. Field***, 110 F.3d 587, 591 (8th Cir. 1997). "We presume that a district court is aware of the scope of its authority to depart." ***Id.***

Beyer believes that the district court did not understand its authority to depart downward. He focuses on the district court's statement in this exchange:

> **Defense counsel**: Under the Guidelines, it's – the Probation Office was right in – in doing the calculation, but you have the power because the calculations aren't always the right thing in terms of the sentence. And [co-defense counsel] was right when he argued this DUI offense has the same effect as if he had gotten five years for a bank robbery. He'd have three points and a Criminal History Category 2; five years for an assault.

So if he had gotten a substantial amount of time on a serious felony, it would be the same situation as we have here. So I'd like the Court to factor that in.

**District court**: But [counsel] I have to believe that the drafters of that language understood that when they said "any conviction," it could have the consequences you're speaking of this morning.

Beyer faults the district court for not responding "with any comment recognizing that it had the authority to apply a Sentencing Guidelines departure for 'overstated criminal history.'"

But the district court did not say it lacked the power to depart, and the government never made that argument. "The overall context of the judge's statement" indicates whether a district court understood its authority to depart. *United States v. Payne*, 81 F.3d 759, 765 (8th Cir. 1996). In context, the district court's statement is a response to defense counsel's point that a serious felony "could" have the same effect as the DUI offense. The context does not show that the district court believed it lacked the power to depart. This court does not have jurisdiction to review the denial of the downward departure. *Cf. United States v. Whitetail*, 956 F.2d 857, 863-64 (8th Cir. 1992) (remanding for resentencing when the district court incorrectly ruled that the jury's rejection of a claim did not allow the court to consider the facts of that claim as a basis for departure).

\*\*\*\*\*\*\*

The judgment is affirmed.

_____

-9-